# IN RE PETITION OF DULTON REALTY, INC., AND OTHERS v. STATE.

132 N. W. (2d) 394.

December 24, 1964—Nos. 38,842 to 38,858.

*Walter F. Mondale,* Attorney General, *Thomas J. Naylor,* County Attorney, *Ralph J. Olson,* Assistant County Attorney, and *Perry Voldness,* Assistant Attorney General, for appellant.

*Montague, Applequist, Lyons, Nolan, Donovan & Knetsch, Harry Applequist, John Donovan, Cant, Haverstock, Beardsley, Gray &*

*Plant, Kenneth M. Anderson,* and *Lawrence E. Nerheim,* for respondents.

*Gordon Rosenmeier* and *John E. Simonett,* for Harry C. Hamm, amicus curiae.

THOMAS GALLAGHER, JUSTICE.

The original petitioners—respondents in this appeal—are all owners of real property located in the downtown district of Duluth. Each filed a petition under Minn. St. 278.01,[1] alleging that its property had been "partially, unfairly, and unequally assessed" for the years 1958 and 1959, except that Duluth Terminal and Cold Storage Company's petition related to the year 1959 only. Stipulations were entered into by the parties showing the agreed "market value" of each of the tracts; and the "true and full value" thereof[2] for the year 1958[3] as carried on the assessor's books. Such values and the ratio or percentage of market value that was applied in determining the true and full value as of petitioners' properties are as follows:

---

[1]Minn. St. 278.01 provides: "Any person having any estate, right, title, or interest in or lien upon any parcel of land, who claims that such property has been partially, unfairly, or unequally assessed, or that such parcel has been assessed at a valuation greater than its real or actual value, or that the tax levied against the same is illegal, in whole or in part, or has been paid, or that the property is exempt from the tax so levied, may have the validity of his claim, defense, or objection determined by the district court of the county in which the tax is levied by serving copies of a petition for such determination upon the county auditor, county treasurer, and the county attorney and filing the same, with proof of such service, in the office of the clerk of the district court on or before the first day of June of the year in which such tax becomes payable."

[2]Minn. St. 273.11. It is generally recognized that the term "true and full value" is synonymous with market value, but that in arriving at such true and full value assessors generally take a percentage of the market value of the property. In re Petition of Hamm v. State, 255 Minn. 64, 95 N. W. (2d) 649.

[3]Under Minn. St. 273.01, real property is to be assessed as of May 1 in each even-numbered year. The assessment thus made applies to the property for tax purposes during the following odd-numbered year.

| | Market Value | True and Full Value 1958 | Ratio or Percentage of Market Value |
|---|---|---|---|
| Dulton Realty, Inc. | $213,000 | $186,695 | 87.650% |
| Patrick Overcoat Co. | 40,000 | 27,500 | 68.750% |
| Duluth Terminal & Cold Storage Co. | 875,000 | 655,655 | 74.932% |
| Center Market & Locker Plant Co. | 250,000 | 184,370 | 73.748% |
| General Property Co. | 175,000 | 133,870 | 76.4971% |
| Melvin Kreiman | 40,000 | 36,155 | 90.3875% |
| Alex J. Lurye and Edith G. Lurye | 95,000 | 79,465 | 83.6473% |
| Spalding Hotel Co. | 200,000 | 166,080 | 83.040% |
| Siam, Inc. | 24,000 | 16,660 | 69.416% |

Based upon this and other evidence, the trial court determined that the taxes levied and assessed against petitioners' property for the years 1958 and 1959 were "excessive, unfair, discriminatory, illegal and invalid" and "contrary to and in violation of M. S. A. 273.11; Art. IX, Sec. 1, of the Constitution of the State of Minnesota;[4] and the Four-

---

[4]Minn. Const. art. 9, § 1, provides in part: "* * *Taxes shall be uniform

teenth Amendment to the Constitution of the United States,"[5] and awarded petitioners refunds of the taxes paid by them for such years as hereinafter set forth.

The evidence submitted at the hearing in district court included the following: Mr. Robert Locky, Duluth city assessor, testified that in fixing the true and full value of real property in Duluth his predecessor had taken 30 percent of the market value of the residential property and 40 percent of the market value of the commercial property. He testified further that with respect to commercial property the foregoing ratio had not been applied to all commercial property in Duluth but had varied depending upon location. It is undisputed that the 40-percent ratio referred to in his testimony had not been applied to petitioners' commercial properties in Duluth, the ratios applied to them having ranged between 68.750 percent to 90.3875 percent.

Mr. C. David Peterson, assessor for the village of Hoyt Lakes in St. Louis County, testified that on May 1, 1958, in his village the ratio or percentage applied to market value for determining true and full value of both residential and commercial property had been 20 percent.

Mr. Ignatius Fink, supervisor of assessments for St. Louis County, testified that when tax abatement petitions are considered in St. Louis County the properties referred to therein are examined and reappraised by his office and if it is found that the true and full value thereof was fixed at more than 20 percent of the market value, he recommends a reduction of the true and full value to 20 percent of market value.

Mr. Carl J. Anderson, deputy supervisor of assessments for St. Louis County, testified that during 1956, 1957, and 1958 he had supervised and participated in a general appraisal of real property in St.

---

upon the same class of subjects, and shall be levied and collected for public purposes * * *."

[5] U. S. Const. Amend. XIV provides in part: "* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State * * * deny to any person within its jurisdiction the equal protection of the laws."

Louis County at the request of the county board and that therein there had been established for almost all communities in the county a standard ratio of 20 percent of market value to be employed in establishing the true and full value of both residential and commercial property; that this ratio had been recommended to all assessors within St. Louis County; and that it was followed generally with respect to the May 1, 1958, assessment valuation.

Mr. A. Howard Wold, who had served as acting city assessor for Duluth during 1958 and had been a deputy city assessor since April 1, 1953, testified that the ratio applied to market value of commercial property in the city in determining its true and full value for tax purposes was almost twice that which had been applied in determining such value in St. Louis County outside of Duluth. He also testified that the mill rate levied by the various governmental subdivisions had been applied to such true and full value as determined by the formulas described. The total mill rates applicable to petitioners' property in 1958 and 1959 were stipulated to be as follows:

### 1958

| | |
|---|---|
| State | 5.9 |
| School | 100.113 |
| County | 44.83 |
| City | 61.377 |
| Total | 212.22 |

### 1959

| | |
|---|---|
| State | 8.1 |
| School | 107.166 |
| County | 52.68 |
| City | 64.024 |
| Total | 231.97 |

Based upon such evidence and additional exhibits and testimony submitted with respect to formulas and methods of assessing property in both Duluth and in St. Louis County, the court found as follows:

"That M. S. A. 273.11[6] specifically requires that property be as-

[6]Minn. St. 273.11 provides: "All property shall be assessed at its true

sessed 'at its true and full value in money.' That M. S. A. 272.03, Subd. 8,[7] then defines 'full and true value' to mean 'the usual selling price at the place where the property to which the term is applied shall be at the time of assessment; being the price which could be obtained at private sale and not at forced or auction sale.' That said definition means market value. That notwithstanding such statutory provisions, and contrary thereto, the assessors of the cities, towns and villages of the County of St. Louis have applied varying percentages to the 'market values' of properties within their jurisdictions to arrive at 'full and true value.'

"That 'market values' of petitioners' properties have been stipulated and are determined to be the values as so stipulated.

"That on May 1, 1958, the full and true values for tax purposes placed upon petitioners' property by the assessor for the City of Duluth varied from a high of 90.3875 percent of market value in the case of the Melvin Kreiman property to a low of 68.750 percent of market value in the case of the Patrick Overcoat property.[8]

---

and full value in money. In determining such value, the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion of value the price for which such property would sell at auction or at a forced sale, or in the aggregate with all the property in the town or district; but he shall value each article or description of property by itself, and at such sum or price as he believes the same to be fairly worth in money. In assessing any tract or lot of real property, the value of the land, exclusive of structures and improvements, shall be determined, and also the value of all structures and improvements thereon, and the aggregate value of the property, including all structures and improvements, excluding the value of crops growing upon cultivated land. In valuing real property upon which there is a mine or quarry, it shall be valued at such price as such property * * * would sell for at a fair, voluntary sale, for cash. Taxable leasehold estates shall be valued at such a price as they would bring at a fair, voluntary sale, for cash."

[7]Minn. St. 272.03, subd. 8, provides: " 'Full and true value' means the usual selling price at the place where the property to which the term is applied shall be at the time of assessment; being the price which could be obtained at private sale and not at forced or auction sale."

[8]These figures would apply to the May 1, 1959, assessment values under Minn. St. 273.01.

"That the Duluth City assessor established a standard to be applied in making assessments on May 1, 1958 by which the full and true value of commercial property within the City of Duluth was to be determined at 40 percent of its market value, and the full and true value of residential property within the City of Duluth was to be determined at 30 percent of its market value, and that such standards were in fact applied in making assessments on May 1, 1958.

"That the assessors in the rest of St. Louis County in making assessments on May 1, 1958, generally applied a standard by which the full and true value of commercial and residential property was determined at 20% of its market value.

\* \* \* \* \*

"That full and true values were placed on petitioners' properties on May 1, 1958, in the amounts shown on the following tabulation. That had the same standard of 20% been applied to petitioners' properties as was applied to other property in St. Louis County, the full and true values for tax purposes on petitioners' properties on May 1, 1958, would have been as follows resulting in the differences indicated:

| "Petitioner | Stipulated Market Value | 'Full and True' Established by Assessor | 'Full and True' When Uniform 20% Is Applied to Market Value | Difference in 'Full and True' Value |
|---|---|---|---|---|
| "Dulton Realty, Inc. | $213,000.00 | $186,695.00 | $ 42,600.00 | $144,095.00 |
| Patrick Overcoat Co. | 40,000.00 | 27,500.00 | 8,000.00 | 19,500.00 |
| Duluth Terminal & Cold Storage Co. | 875,000.00 | 655,655.00 | 175,000.00 | 480,655.00 |
| Center Market & Locker Plant Co. | 250,000.00 | 184,370.00 | 50,000.00 | 134,370.00 |
| General Property Co. | 175,000.00 | 133,870.00 | 35,000.00 | 98,870.00 |
| Melvin Kreiman | 40,000.00 | 36,155.00 | 8,000.00 | 28,155.00 |
| Alex J. Lurye and Edith G. Lurye | 95,000.00 | 79,465.00 | 19,000.00 | 60,465.00 |
| Spalding Hotel Co. | 200,000.00 | 166,080.00 | 40,000.00 | 126,080.00 |
| Siam, Inc. | 24,000.00 | 16,660.00 | 4,800.00 | 11,860.00 |

"That petitioners' properties were placed on the tax rolls at a full and true value substantially in excess of the full and true values that would have resulted had the standards applied by other assessors in St. Louis County to other property been used.

"That M. S. A. 273.13[9] requires that 'assessed' valuations of petitioners' properties be 40 percent of 'full and true value.'

"That the total mill rate applicable to the 'assessed' valuations of petitioners' properties in 1958 was 217.05 mills, and in 1959, 237.35 mills. That said mill rates included 44.83 mills in 1958 and 52.68 mills in 1959 levied for county purposes only. That said mill rates were applied to the 'assessed' valuations of said properties determined from the full and true values placed on those properties by the assessor for the City of Duluth on May 1, 1958, set forth in the table * * * above.

"That petitioners were assessed and paid under protest taxes in the amounts and for the years indicated below:

| "Dulton Realty, Inc. | 1958 | $16,208.86 |
| | 1959 | $17,724.82 |
| Patrick Overcoat Co. | 1958 | $ 2,387.56 |
| | 1959 | $ 2,610.86 |
| Duluth Terminal & Cold Storage Co. | 1959 | $62,247.88 |
| Center Market & Locker Plant Co. | 1958 | $16,007.02 |
| | 1959 | $17,504.08 |
| General Property Co. | 1958 | $11,622.60 |
| | 1959 | $12,709.62 |
| Melvin Kreiman | 1958 | $ 3,138.98 |
| | 1959 | $ 3,432.56 |
| Alex J. Lurye & Edith G. Lurye | 1958 | $ 6,899.16 |
| | 1959 | $ 7,544.40 |

[9]Minn. St. 273.13, subd. 1, provides: "All real and personal property subject to a general property tax and not subject to any gross earnings or other lieu tax is hereby classified for purposes of taxation as provided by this section."

Minn. St. 273.13, subd. 9, provides: "All property not included in the preceding classes shall constitute class 4 and shall be valued and assessed at 40 percent of the full and true value thereof."

| | | |
|---|---|---|
| Spalding Hotel Co. | 1958 | $14,419.08 |
| | 1959 | $15,767.64 |
| Siam, Inc. | 1958 | $ 1,446.42 |
| | 1959 | $ 1,581.70 |

"That, had petitioners' properties been placed on the tax rolls with a full and true value equal to 20% of market value, the tax assessed against those properties would have been the amounts indicated below:

| | | |
|---|---|---|
| "Dulton Realty, Inc. | 1958 | $ 3,698.53 |
| | 1959 | $ 4,044.44 |
| Patrick Overcoat Co. | 1958 | $ 694.56 |
| | 1959 | $ 759.52 |
| Duluth Terminal & Cold Storage Co. | 1959 | $16,614.50 |
| Center Market & Locker Plant Co. | 1958 | $ 4,341.00 |
| | 1959 | $ 4,747.00 |
| General Property Co. | 1958 | $ 3,038.70 |
| | 1959 | $ 3,322.90 |
| Melvin Kreiman | 1958 | $ 694.56 |
| | 1959 | $ 759.52 |
| Alex J. Lurye & Edith G. Lurye | 1958 | $ 1,649.58 |
| | 1959 | $ 1,803.86 |
| Spalding Hotel Co. | 1958 | $ 3,472.80 |
| | 1959 | $ 3,797.60 |
| Siam, Inc. | 1958 | $ 416.74 |
| | 1959 | $ 455.71" |

As conclusions based upon the findings, including the foregoing, the trial court determined:

"That the Fourteenth Amendment to the Constitution of the United States and Article IX, Section 1, of the Minnesota Constitution require that there be uniformity of taxation with respect to property of the same class and, to that end, when there is a deviation from the standard established by the Legislature, that deviation must be uniformly applied to all property.

"That St. Louis County is one taxing district and that the City of Duluth is an integral part thereof.

"That the 20% standard applied to other property by assessors in St. Louis County should have been applied to petitioners' properties.

"That the taxes levied and assessed against petitioners' properties for the years 1958 and 1959 were excessive, unfair, discriminatory, illegal and invalid, being contrary to and in violation of M. S. A. 273.11; Art. IX, Sec. 1, of the Constitution of the State of Minnesota; and the Fourteenth Amendment to the Constitution of the United States.

"That petitioners be awarded refunds of taxes paid by them for the years 1958 and 1959 in the following amounts:

| | |
|---|---|
| "Dulton Realty, Inc. | $26,190.71 |
| Patrick Overcoat Company | $ 3,544.34 |
| Duluth Terminal & Cold Storage Company | $45,633.38 |
| Center Market & Locker Plant Co. | $24,423.10 |
| General Property Company | $17,970.62 |
| Melvin Kreiman | $ 5,117.46 |
| Alex J. Lurye and Edith G. Lurye | $10,990.12 |
| Spalding Hotel Company | $22,916.32 |
| Siam, Inc. | $ 2,155.67" |

In a memorandum attached to and made a part of such findings, the court stated:

"* * * Respondent appears to concede that petitioners' properties have borne a substantially disproportionate share of the taxes levied by St. Louis County. I find no authority granted by the Minnesota Legislature for the assessor or any other official to arbitrarily place property on the tax rolls at a different fraction of its market value than is applied to other property within the County. As appears from the Findings * * * petitioners have paid almost four times as much taxes for the years 1958 and 1959 as they would have been required to pay if the same standard of assessment had been applied to their property as was applied to other property in St. Louis County. To suggest that no remedy be granted under circumstances such as these because officials are seeking to eliminate the discrimination in the future is to ignore the requirements of the Fourteenth Amendment of the United

States Constitution and Article IX, Section 1, of the Minnesota Constitution and of Minnesota statutory law.

"These are not proceedings in which this court is required to direct or supervise the carrying on of an administrative function by public officials. In these proceedings the public officials have, in fact, completed their function, and the petitioners claim that the performance of that administrative duty has been so arbitrary and unreasonable as to require judicial correction. Chapter 278 of Minnesota Statutes, under which these petitions were filed, provides the means for judicial review * * *. I have found that the statutory language is clear and unambiguous and that petitioners are entitled to a refund of taxes paid in excess of the amount that should have been levied according to the standard used in determining full and true value established by assessing officials in St. Louis County.

"* * * The assessors * * * have failed to comply with the clear statutory mandate of M. S. A. 273.11 to assess property at its 'true and full value in money.' They have, rather, applied varying percentages to market value to arrive at what they then find to be 'full and true' value. There is no foundation whatever for this procedure * * * their practices constitute a clear departure from the statutes.

$$* \quad * \quad * \quad * \quad *$$

"The Legislature of the State * * * has *not* created classes of property for purposes of determining full and true value, but has, rather, provided that all property be assessed at its 'true and full value in money.' Surely the taxing officials of this state cannot, by administrative mandate, create classes of property for tax purposes * * *. The same standard must be applied to all property subject to taxation in arriving at its full and true value.

$$* \quad * \quad * \quad * \quad *$$

"* * * The assessment of taxes in this state is coordinated by the county. The overall mill rate to be applied to the assessed value of properties within the county is determined by county officials and is * * * applied by county officials to determine the ultimate tax imposed on each taxpayer. Taxes are collected by the county. In the instant cases 44.83 of the 217.05 mills applied to petitioners' properties

for 1958 (or over 20 per cent) went to the county for county purposes. In 1959 it was 52.68 mills out of 237.35.

\* \* \* \* \*

"\* \* \* Chapter 278 of Minnesota Statutes, under which these proceedings were commenced, clearly considers the county to be a taxing district. Section 278.12[10] provides that in the event a refund of taxes is ordered, such refund shall be charged against each taxing district that levied taxes upon the property in the proportion that its levy is of the total levy. Since the county levied 20% of the taxes imposed upon petitioners' property, it is clearly a taxing district.

"It is my conclusion that the 'taxing district' with respect to these petitioners is the County of St. Louis, and that petitioners' properties may not be taxed on an unequal or discriminatory basis in relation to other property within said county."

Subsequent to the trial court's determination as aforesaid, the state

---

[10]Minn. St. 278.12 provides: "If upon final determination the petitioner has paid more than the amount so determined to be due, judgment shall be entered in favor of the petitioner for such excess, and upon filing a copy thereof with the county auditor he shall forthwith draw a warrant upon the county treasurer for the payment thereof; provided that, with the consent of the petitioner, the county auditor may, in lieu of drawing such warrant, issue to the petitioner a certificate stating the amount of such judgment, which amount may be used to apply upon any taxes due or to become due for the taxing district or districts whose taxes or assessments are reduced, or their successors in the event of a reorganization or reincorporation of any such taxing district. In the event the auditor shall issue a warrant for refund or certificates, he shall charge the amount thereof to the state and other taxing districts in proportion to the amount of their respective taxes included in the levy and deduct the same in the subsequent distribution of any tax proceeds to the state or such taxing districts, and upon receiving any such certificate in payment of other taxes, the amount thereof shall be distributed to the state and other taxing districts in proportion to the amount of their respective taxes included in the levy; provided that if in the judgment the levy of one or more of the districts be found to be illegal, to the extent that the tax so levied is reduced on account of the illegal levies, the amount to be charged back shall be charged to the districts and the amount thereof deducted from any distributions thereafter made to them."

moved for amended findings and conclusions, or in the alternative for a new trial, on the ground, among others, that the court had erred in applying the 20-percent ratio to the market value to arrive at the true and full value of petitioners' properties for tax purposes. This motion was denied and in this appeal the state asks that the full tax levied on petitioners' property be sustained because, it asserts, petitioners have failed to establish that there were *any* assessment standards generally applied in assessing property in either Duluth or St. Louis County; and that the court erred in applying the lowest percentage ratio used in the "taxing district" whether the county or a lesser division thereof be regarded as such "taxing district."

1. It is definite that under both the State and Federal Constitutions taxes must be uniform upon the same class of property; and that an individual may not be discriminated against as to taxes which he is called upon to pay for public purposes. In re Petition of Hamm v. State, 255 Minn. 64, 95 N. W. (2d) 649. Thus, in Township of Hillsborough v. Cromwell, 326 U. S. 620, 623, 66 S. Ct. 445, 448, 90 L. ed. 358, 363, the United States Supreme Court stated:

"The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment. He may not complain if equality is achieved by increasing the same taxes of other members of the class to the level of his own. The constitutional requirement, however, is not satisfied if a State does not itself remove the discrimination, * * *. The courts of New Jersey in a long line of decisions have held that a taxpayer who has been singled out for discriminatory taxation may not obtain equalization by reduction of his own assessment. His remedy is restricted to proceedings against other members of his class for the purpose of having their taxes increased. * * * On the basis of that rule it is plain that the state remedy is not adequate to protect respondent's rights under the federal Constitution."

2. To assure that such discrimination will not occur, the legislature has enacted certain statutes which set forth specifically the basis for evaluating property and for levying taxes thereon. Thus, § 273.11 (see

footnote 6 above) provides that "[a]ll property shall be assessed at its *true and full value* in money" (italics supplied) and that "[i]n determining such value, the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation"; while § 272.03, subd. 8, defines full and true value as "the usual selling price at the place where the property to which the term is applied shall be at the time of assessment; being the price which could be obtained at private sale and not at forced or auction sale." This statutory definition has been recognized as meaning market value within the customary legal concept of the latter term. In re Petition of Hamm v. State, *supra*; Wagner v. Commr. of Taxation, 258 Minn. 330, 104 N. W. (2d) 26; In re Taxes of Potlach Timber Co. 160 Minn. 209, 199 N. W. 968; Schleiff v. County of Freeborn, 231 Minn. 389, 43 N. W. (2d) 265.

3. This court, as well as the Federal courts, has recognized that any substantial deviation from the constitutional requirements of equality in taxation which results in discrimination with respect to the property of any individual would be violative of such requirements. In re Petition of Hamm v. State, *supra*; Sioux City Bridge Co. v. Dakota County, 260 U. S. 441, 43 S. Ct. 190, 67 L. ed. 340; Cummings v. Merchants' Nat. Bank, 101 U. S. 153, 25 L. ed. 903. Where deviation is the result of applying different ratios to market value of property of the same class, the courts have no choice other than to hold that the resulting tax would be discriminatory against the individual to whose property the higher ratio was applied. This rule is expressed in the Sioux City Bridge case as follows (260 U. S. 446, 43 S. Ct. 192, 67 L. ed. 343):

"* * * This Court holds that the right of the taxpayer whose property alone is taxed at 100 per cent. of its true value is to have his assessment reduced to the percentage of that value at which *others are taxed* even though this is a departure from the requirement of statute. The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law." (Italics supplied.)

Under these principles, if all assessors throughout the state, after determining the market value of property within their respective assessment districts, had then each applied the identical percentage thereto to arrive at its value for assessment purposes the resulting tax would undoubtedly meet constitutional requirements.

4. In the instant case some difficulty arises from the fact that the trial court, after determining that the county constituted the taxing district, then sought to equalize taxes therein by using as a basis for the assessed value of all property within the county, the smallest percentage of its market value which any of the assessors within the county had used in determining its value for tax purposes within his particular districts. We are convinced by reference to governing statutes that the legislature has not designated the counties as such to be the taxing units or basic taxing districts within this state, and while there is much merit to a solution which equalizes taxes within a county, our constitution contemplates and requires equality *throughout the state*. Originally it provided (Minn. Const. art. 9, § 1):

"All taxes to be raised in this state shall be as nearly equal as may be, and all property on which taxes are to be levied shall have a cash valuation, and be equalized and uniform throughout the state."

Minn. Const. art. 9, § 1, now provides:

"* * * Taxes shall be uniform upon the same class of subjects, * * *."

Since inequality between counties is as much a violation of constitutional requirements as is inequality within a county, merely to adopt the county as the taxing unit would fall far short of solving the many problems of inequality now existing. In many areas school districts overlap county lines, and cities and villages often lie within more than one county. Thus, for example, the city of St. Cloud lies within three counties. Adopting the county as the taxing unit for purposes of uniformity would not achieve equalization in such school districts, nor would it solve the problem of equal taxation with respect to cities and villages which lie within more than one county.

In any event, of most importance in this connection is the absence of any statutory authority for establishing the county as the taxing unit.

On the contrary, under our statutes assessments of property in the first instance are made by local assessors,[11] with provision for the appointment of county assessors *in the discretion* of the county boards (§ 273.071, subd. 11)[12] and, in counties which do not employ a county assessor, for the appointment of county supervisors of assessments (§ 273.071, subd. 1)[13] neither of whose functions in counties embracing cities of the first class extend within the corporate limits of such cities. In counties where the office of supervisor of assessments has been established, his duties are mainly advisory and contemplate the existence of local assessors.[14] Where the county assessor system is in effect, local assessors are required to review and appraise property in their districts and to report results to the county assessor, who is required to do the necessary book work in connection therewith. § 273.071, subd. 13.[15] While provision is made in § 273.072[16] for

---

[11]See, Montague, *The Development and Present Form of the Minnesota Tax System,* 18 M. S. A. pp. 53, 62.

[12]§ 273.071, subd. 11, provides: "If the board of county commissioners of any county, except a county containing a city of the first class, shall determine that it will be for the best interests of the county to employ a county assessor instead of a supervisor of assessments, it may do so, in which case the office of county supervisor of assessments for that county shall be abolished."

[13]§ 273.071, subd. 1, provides: "Every county in this state which does not employ a county assessor shall have a county supervisor of assessments. In those counties embracing cities of the first class, the powers and duties of the supervisor shall be limited to that portion of the county lying outside the corporate limits of the cities of the first class, and the supervisor shall not be a resident of the city of the first class embraced in his county."

[14]See, Report of the Governor's Minnesota Tax Study Committee 1956, p. 157.

[15]§ 273.071, subd. 13, provides: "When a county assessor is appointed in any county the duties of the duly elected or appointed local assessors shall be to view and appraise the value of all property, as provided by law, but all book work shall be done by the county assessor or his assistants and the value of all property subject to assessment and taxation shall be determined by the county assessor, except as otherwise hereinafter provided."

[16]§ 273.072 provides in part: "Subdivision 1. Any county and any city,

the making of assessments by either the county assessor or supervisor of assessments, if an agreement to such effect is made pursuant to § 471.59,[17] and it is conceivable thereunder that all local units of a

---

village, or town lying wholly within the county and *constituting a separate assessment district* may, by agreement entered into under section 471.59 and approved by the commissioner of taxation, provide for the assessment of property in the municipality or town by the county assessor or supervisor of assessments. Any two or more cities, villages, or towns *constituting separate assessment districts,* whether their assessors are elective or appointive, may enter into an agreement under section 471.59 for the assessment of property in the contracting units by the assessor of one of the units or by an assessor who is jointly employed.

"Subd. 2. The agreement may provide for the abolition of the office of local assessor in any contracting unit when the assessment of property within it is to be made under the agreement by another assessor. In such case, the office of assessor in that unit shall cease to exist upon the date fixed in the agreement but not before the end of the term of the incumbent, if he is serving for a fixed term, or when an earlier vacancy occurs.

"Subd. 3. When the agreement provides for joint employment of an assessor, he shall be appointed and removed in a manner and shall hold office for such term as is provided in the agreement, notwithstanding charter or other statutory provisions for election or appointment of an assessor for a prescribed term." (Italics supplied.)

[17]§ 471.59 provides in part: "Subdivision 1. Two or more governmental units, by agreement entered into through action of their governing bodies, may jointly or cooperatively exercise any power common to the contracting parties or any similar powers, including those which are the same except for the territorial limits within which they may be exercised. The agreement may provide for the exercise of such powers by one or more of the participating governmental units on behalf of the other participating units. The term 'governmental unit' as used in this section includes every city, village, borough, county, town, and school district, and other political subdivision.

"Subd. 2. Such agreement shall state the purpose of the agreement or the power to be exercised and it shall provide for the method by which the purpose sought shall be accomplished or the manner in which the power shall be exercised.

\*   \*   \*   \*   \*

"Subd. 4. Such agreement may be continued for a definite term or until rescinded or terminated in accordance with its terms."

county might by agreement eliminate local assessors and operate with the county as the assessing district, we know of no county where this has been done.

According to a study made in 1956, there then existed within the state approximately 2,700 assessing officers, of whom 49 were county assessors, and 38 county supervisors of assessments.[18] As indicated above, under our statutes all assessors function at the town, village, city, or, in unorganized territories, at the district level; and the various taxing districts are comprised of the respective areas for which each such local assessor was appointed. Their work is subject to correction by the county assessor and to general supervision by the county supervisor of assessments, except, as indicated above, in cities of the first class. The commissioner of taxation has broad power under Minnesota law to review the official acts of such county assessors and supervisors of assessments, although his official acts in turn are subject to review by the Board of Tax Appeals. §§ 270.01, 271.05. It is noticeable that while cities, villages, and towns are referred to as taxing or assessment districts in various statutes, nowhere is there any reference to the county as such a district.

5. From the foregoing it can be ascertained that the solution of the problem before us is difficult, not only because our statutory scheme of assessment is antiquated and inadequate, but also because its basic requirements have to a great extent been ignored. Instead of using the market or true and full value of property to be assessed as the basis for its taxation, as the statutes require, each assessor has established a formula under which only a percentage of such value is used for assessment purposes. These percentages vary greatly from one taxing district to another even within the counties. According to the study made in 1956, they then ranged from an average of 16.91 percent in Koochiching County to an average of 51.99 percent in Red Lake County, while the overall average for all counties was then 35.99 percent.[19] In the case before us, percentage variations prevailed not only

---

[18]See, Report of the Governor's Minnesota Tax Study Committee 1956, p. 156.

[19]See, Report of the Governor's Minnesota Tax Study Committee 1956, p. 175.

between taxing districts within St. Louis County, but also as to various properties and types of properties within the city of Duluth. There for tax purposes assessors arbitrarily based their appraisals on percentages of market value ranging between 30 percent and 90.3875 percent thereof, a procedure for which there is no statutory authority whatever.

However, to now adopt the lowest percentage of market value used by any assessor in St. Louis County as the basis for equalization of the taxes levied on property within the city of Duluth would not answer the problem of attaining statewide equality, and most certainly would result in a chaotic situation as to revenues required for the operation of various units of our state government.[20] Further, since for many years taxes have been based upon fictitious valuations resulting from the application of differing percentages to the market value of property to be taxed, to now require that assessments be based strictly upon true and full value of all property, without adjusting the rate to be applied thereto, would as to many properties raise taxes to the point of confiscation.

Notwithstanding this, it is clear from the facts recited that petitioning taxpayers here are entitled to substantial relief. To procure this, it is necessary that these proceedings be remanded to the district court with directions that petitioners be taxed on the same basis as other property owners within the city of Duluth. To achieve this, the district court in determining the value of petitioners' various properties for assessment purposes should apply the lowest percentage of the market value thereof that was applied to other property within the city of Duluth for assessment purposes, which the record indicates was 30 percent. Any taxes paid by petitioners in excess of the amount arrived at as a result of this formula and included in their petitions herein should be refunded to them pursuant to §§ 278.01 and 278.12.

The legislature is soon to assemble and no doubt will take action with respect to the many problems presently relating to equalization of taxation with a view toward eliminating the confusion and inequality

---

[20]The same problem confronting us was recently considered by the Arizona court in Southern Pac. Co. v. Cochise County, 92 Ariz. 395, 377 P. (2d) 770, where this question was discussed.

now present. One suggestion is that it specify a definite number of years during which all assessors be required to use a fixed percentage of full and true value in determining the assessed value of property. Possibly the average percentage presently prevailing throughout the state, if it can be ascertained, would suffice for this. It might further provide that at the end of the prescribed period all assessors thereafter be required to take the true and full value of property as the sole basis for its assessment as required by the constitution. It would also seem essential that tax rates be adjusted so that this latter requirement would not increase taxes to the point of confiscation in areas where valuations have been low. Whatever formula is arrived at, it should be such that if its use is required uniformly throughout the state, equality in taxation will result.

6. It has been suggested that real property might be classified by assessors as to type, i.e., farm, lakeshore, residential, commercial, etc.; and that when so classified by them, even though different percentages were applied to the market values of properties in different classifications, this would not invalidate taxes on properties within a classification to which the identical percentage had been applied. We are of the opinion that before such classifications could be undertaken by assessors some statutory enactment, delegating authority therefor to them, with standards for guidance, would be essential. At present, § 273.13 manifests a legislative intent to reserve any authority in this field to the legislature.

7. In a brief of amicus curiae, a solution of the problem of equalizing assessments in various taxing districts is suggested.[21] While the

---

[21]The solution proposed is as follows (brief of amicus curiae, page 12): "In a proceeding brought under *Minnesota Statutes* c. 278 where the total tax imposed upon the property subject to the petition consists of a levy by more than one taxing district the levy by each such taxing district for the purposes of the proceeding shall be treated as a separate tax and the amount of each computed separately. If it is found that there has been discrimination against petitioner with respect to any such tax the amount of such tax to be imposed upon petitioner's property with respect to such taxing district shall be determined in the following manner regardless of whether such taxing district includes property in one or more assessor's dis-

plan recommended appears sound and would lessen many of the difficulties and much of the confusion now present in the matter of tax equalization, again we feel that before it could be adopted specific legislative authority therefor would be essential.

Remanded with directions to proceed in accordance with this opinion.

---

tricts: The amount of the tax to be imposed upon petitioner's property for each such taxing district shall be ascertained by applying the mill rate used by the county auditor with respect to the taxes levied by such taxing district for the year in question to an assessed value of petitioner's property determined by first applying the lowest standard of assessment (regardless of kind or class of property to which applicable) prevailing in the taxing district, or, if there is no standard of assessment prevailing in such district, then the lowest ratio of assessment applied to property of any kind or class in said district to the market value of petitioner's property, and by then applying thereto the class rate required by § 272.13, *Minnesota Statutes.* The judgment entered shall show the total tax to be imposed upon petitioner's property and if the total tax consists of levies by more than one taxing district, it shall show the tax to be imposed upon petitioner's property as determined by the court separately for the levy of each such taxing district.

"Under this rule recomputation would follow easily when the trial court has made the two essential findings of fact explained in Renneke v. County of Brown [255 Minn. 244, 97 N. W. (2d) 377]."

Illustrative of this formula, amicus curiae applies it to the property of Dulton Realty as follows (pages 14 and 15):

*"Full and true value by school and city district standards:*
  i. e., 30% of market value (.30 x $213,000)

                                          equals $63,900.00

*"Assessed value for city and school levies:*
  i.e., 40% of full and true (.40 x $63,900)

                                          equals $25,560.00

*"Full and true value by county districts standards:*
  i.e., 20% of market value (.20 x $213,000)

                                          equals $42,600.00

*"Assessed value for county and state levies:*
  40% of full and true (.10 x $42,600)

                                          equals $17,040.00"