## JOSEPH P. JOHNSON v. COUNTY OF RAMSEY.

187 N. W. (2d) 675.

May 28, 1971—No. 42645.

*William W. Essling,* for appellant.

*William B. Randall,* County Attorney, and *Thomas M. Quayle* and *Steven C. DeCoster,* Assistant County Attorneys, for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the district court denying a taxpayer's motion for amended findings or a new trial in a case involving a petition alleging that real property owned by appellant had been unequally assessed as compared to other property of like nature. The trial court held that the property had been fairly and equally assessed and that the tax imposed was legal.

The essential facts have been stipulated. Appellant is the owner of a lot which fronts on White Bear Lake and is located within the boundaries of the city of White Bear Lake. The lots which border his lot on either side are located within White Bear Township. It is agreed that no difference in the actual value of the properties results from the fact that they are located in either the city of White Bear Lake or White Bear Township. The record does not disclose how appellant's lot happens to be within the city of White Bear Lake while the adjoining lots on both sides are in White Bear Township. It has probably come about by virtue of requests for annexation to the city at some time during the past. In any event, appellant's property forms a sort of peninsula of the city running through property in the township, all of which property is riparian to White Bear Lake.

While it does not appear in the record in this case, we had occasion in In re Petition of Dulton Realty, Inc. v. State, 270 Minn. 1, 132 N. W. (2d) 394, to review the development of the system evolved over the years for assessing real property in this state. Real property in Minnesota is assessed in even-numbered years.

Minn. St. 273.01. Even prior to the adoption of the Tax Reform and Relief Act of 1967, Ex. Sess. L. 1967, c. 32, Minn. St. 1965, § 273.11, provided that all property shall be assessed at its true and full value in money. As we pointed out in Dulton, a study was made in 1956 which showed that there were some 2,700 assessing officers of one kind or another throughout the state. Each had more or less established a formula of his own for fixing the assessed value of real estate, which inevitably resulted in a great disparity in values on which the tax was based, depending on where the property was located. This study showed that the percentage of true and full value of property used by different assessors in arriving at assessed valuation varied from 16.91 percent to 51.99 percent, with an overall average of 35.99 percent. The percentage applied to property in the city of Duluth varied from 30 percent of the full and true value to 90.3875 percent. The difficulty of equalizing these assessments was recognized in Dulton. The tax actually paid by the owner is computed by applying to the assessed valuation the combined rate established by governmental units sharing in the tax. To require the assessors to adopt the true and full market value of the property without at the same time adjusting the rate would have led to confiscatory taxes. In Dulton, we said (270 Minn. 21, 132 N. W. [2d] 408):

"* * * [S]ince for many years taxes have been based upon fictitious valuations resulting from the application of differing percentages to the market value of property to be taxed, to now require that assessments be based strictly upon true and full value of all property, without adjusting the rate to be applied thereto, would as to many properties raise taxes to the point of confiscation."

We suggested a possible solution by the legislature in the following language:

"The legislature is soon to assemble and no doubt will take action with respect to the many problems presently relating to

equalization of taxation with a view toward eliminating the confusion and inequality now present. One suggestion is that it specify a definite number of years during which all assessors be required to use a fixed percentage of full and true value in determining the assessed value of property. Possibly the average percentage presently prevailing throughout the state, if it can be ascertained, would suffice for this. It might further provide that at the end of the prescribed period all assessors thereafter be required to take the true and full value of property as the sole basis for its assessment as required by the constitution. It would also seem essential that tax rates be adjusted so that this latter requirement would not increase taxes to the point of confiscation in areas where valuations have been low."

Dulton was decided in 1964. At the 1967 extra session of the legislature, the Tax Reform and Relief Act of 1967, Ex. Sess. L. 1967, c. 32, was enacted. In Art. VII, § 3, of that act, the legislature amended Minn. St. 1965, § 273.11, to provide, in part:

"All property shall be *valued at its market value*. In determining such value, the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion of value the price for which such property would sell at auction or at a forced sale, or in the aggregate with all the property in the town or district; but he shall value each article or description of property by itself, and at such sum or price as he believes the same to be fairly worth in money. In assessing any tract or lot of real property, the value of the land, exclusive of structures and improvements, shall be determined, and also the value of all structures and improvements thereon, and the aggregate value of the property, * * *." (Italics supplied.)

The significant change in language was that the prior statute provided that "[a]ll property shall be assessed at its true and full value in money" and the amended statute provides that "[a]ll property shall be valued at its market value." The legislature then provided:

"* * * Each assessor shall annually file with the county auditor the ratio which he has used of adjusted market value to market value of all the taxable property within the taxing district, * * *."

It is apparent that the legislature attempted by the enactment of this statutory provision to require assessors to revalue or reassess all real property at its actual market value and then to permit the application of a uniform percentage of that amount in arriving at what is now denominated "adjusted market value" or "full and true value." Minn. St. 272.03, subd. 12.

In Ramsey County, all property is assessed by the county assessor. While Minn. St. c. 391 does not expressly state that the county assessor has exclusive authority to assess all property in the county, it has been inferred that such is the meaning of the chapter. From this fact appellant argues that inasmuch as all property in the county is assessed by the county assessor, the county constitutes a single assessment district and that, constitutionally, there can be no disparity in assessed valuations of property of equal value within the county as a single assessment district.

In re Petition of Hamm v. State, 255 Minn. 64, 95 N. W. (2d) 649, discusses the right to uniformity in the assessment of property within a taxing district. We think it is distinguishable from the facts now before us. In the Hamm case, the discrepancy in assessment existed within the taxing district itself. Even there, we recognized that the discrimination must be something more than incidental to revaluation of all property within a county. We said (255 Minn. 70, 95 N. W. [2d] 654):

"It follows that discrimination in the imposition of the tax burden, resulting from systematic, arbitrary, or intentional undervaluation of some property as compared to the valuation of other property in the same class, violates the uniformity clause of Minn. Const. art. 9, § 1, and the equal-protection clause of U. S. Const. Amend. XIV, even though the property so discrim-

inated against be not assessed higher than its fair market value adopted as a uniform basis in the making of assessments. Uniformity and equality in a constitutional sense does not require mathematical exactitude in the valuation of property for taxation. Absolute equality is impracticable of attainment and the taxpayer may not complain unless the inequality is substantial. Mere errors of judgment in estimating market value of property usually will not support a claim of discrimination. There must be something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of tax assessment officers and the validity of their actions are presumed, and the burden of proof of overcoming such presumption rests upon the complaining party. Good faith alone does not, however, justify an assessment which is discriminatory in fact."

In order to comply with the Tax Reform and Relief Act of 1967, the Ramsey County assessor in 1967 undertook to revalue all property in the county at its actual market value. He was unable to complete a reassessment of all property in the county in one year so he began reassessment in the city of White Bear Lake and the villages of North Oaks, Lauderdale, and Little Canada— the municipalities within the county where there was the greatest disparity in the valuation of property. Reassessment of the property in these municipalities was completed prior to January 2, 1968. Property in the town of White Bear, and the villages of Vadnais Heights, Gem Lake, and Falcon Heights, and in a large portion of the city of St. Paul was selected for revaluation prior to January 1970.[1] It was intended that the balance of the county would be reassessed prior to 1972. Failure to complete the reassessment of the entire county at one time inevitably led to a disparity between the assessed valuation of the property located in municipalities where reassessment was completed and the assessed valuation of the property in municipalities where it was

---

[1] While the record does not so show, the briefs indicate that the reassessment of the town of White Bear and the other areas mentioned above was actually completed prior to January 1970.

not, for the reason that the fictitious full and true value of the property used in many of the municipalities in prior years was much lower than the actual market value.

The trial court proceeded on the theory that the city of White Bear Lake was a taxing district within Ramsey County. He held, and it is conceded here, that there was no disparity in assessment of properties within the city of White Bear Lake itself. Neither is there, apparently, any disparity in assessment of properties within the town of White Bear. The disparity exists between assessment of properties in the city of White Bear Lake after a reassessment and that of other municipalities of the county where reassessment has not been completed.

In Dulton, we rejected the contention that St. Louis County was a single assessment district and that all assessments in the county must be reduced to the lowest percentage of full and true value to be found in the county. Similarly, in the case before us, we believe that if the county is to be a single assessment district, this must be provided by legislative act. Under § 273.072, any city, village, or town lying wholly within a county may by agreement abolish the office of local assessor and provide for assessment of the property by the county assessor. Such agreement does not, however, abolish the local unit as an assessment district. It simply places upon the county assessor the function of assessment formerly performed by the local assessor.

It is also noticeable that Minn. St. c. 391 is not by its terms limited to Ramsey County. Section 391.01 reads:

"*Any county* in the state of Minnesota now or hereafter having a county assessor, in addition to all powers now possessed by such county, is hereby authorized and empowered each year to appropriate sufficient money to defray the expense of making a proper assessment of all property in such county for the purpose of general taxation." (Italics supplied.)

Significantly, this provision also fails to make the county a single taxing district. To hold otherwise would create disparity rather than eliminate it. If, for instance, the assessed value of appel-

lant's property were reduced to the lowest assessment found in the town of White Bear, it would be completely out of line with other properties in the city of White Bear Lake unless they, too, were reduced at the same time.

It has been suggested that even if the county were to be considered a single assessment district, appellant would not be entitled to relief. The trial court did not pass on this question. There is, however, much merit in the contention.

We have not been faced with the precise question involved, but other jurisdictions have had to face it. Whether we consider Ramsey County a single assessment district or not, we think the better rule is that where it becomes necessary to reassess all the property within a county and it is impractical or impossible to complete the reassessment all at one time, a taxing authority should be given a reasonable time within which to complete the entire job. In Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350, 38 S. Ct. 495, 62 L. ed. 1154, the Supreme Court of the United States upheld imposition of a tax burden which was in fact unequal for one year because of failure to complete a comprehensive reappraisal until the next year. See, also, Hamilton v. Adkins, 250 Ala. 557, 35 So. (2d) 183, certiorari denied, 335 U. S. 861, 69 S. Ct. 133, 93 L. ed. 407; Rogan v. County Commrs. of Calvert County, 194 Md. 299, 71 A. (2d) 47; May Department Stores Co. v. State Tax Comm. (Mo.) 308 S. W. (2d) 748; Skinner v. New Mexico State Tax Comm. 66 N. Mex. 221, 345 P. (2d) 750, 76 A. L. R. (2d) 1071; Alberts v. Board of Supervisors, 193 Cal. App. (2d) 225, 14 Cal. Rptr. 72; Lord v. County of Marin, 214 Cal. App. (2d) 25, 29 Cal. Rptr. 248; Barnes v. Dale County Board of Equalization, 283 Ala. 437, 218 So. (2d) 150; Annotation, 76 A. L. R. (2d) 1077.

There are other cases apparently to the contrary: Titus v. State Tax Comm. 374 Mich. 476, 132 N. W. (2d) 647 (two justices dissenting); Sparks. v. McCluskey, 84 Ariz. 283, 327 P. (2d) 295; McCluskey v. Sparks, 80 Ariz. 15, 291 P. (2d) 791; Cum-

berland Coal Co. v. Board of Revision, 284 U. S. 23, 52 S. Ct. 48, 76 L. ed. 146.

A careful examination of these cases pro and con does show some distinguishing facts that we need not discuss here.

From a strictly technical standpoint, if we were to consider Ramsey County as a single taxing district, there might be some difficulty in justifying disparity, even temporarily, under our constitutional requirement that property of similar nature be taxed equally, but it seems the only practical solution to the problem is to permit the authorities having the duty to reassess the property a reasonable time within which to complete a comprehensive reassessment. In the case before us, no one has contended that Ramsey County is not making a good-faith effort to revaluate the property within the county as soon as possible and to apply a uniform rate in arriving at the adjusted market value, which then becomes the basis for determining the tax to be paid. When this reassessment has been completed, a more equitable basis for taxation will exist than ever has before. For the time being, assuming the county proceeds to complete the reassessment within a reasonable time, we feel compelled to hold that since the assessed valuation of appellant's property following reassessment is not disproportionate to the assessed valuation of other property within the city of White Bear Lake, the new assessment should be upheld, even though there exists temporarily some disparity between the assessment of appellant's property and the assessment of property in other taxing districts within the county. Any other decision would create more disparities than it would eliminate.

Affirmed.