### EFFIE WAGNER v. COMMISSIONER OF TAXATION AND ANOTHER.

104 N. W. (2d) 26.

July 1, 1960—No. 37,904.

*Ryan, Ryan & Ebert,* for appellant.

*Herbert E. Olson,* County Attorney, for respondents.

DELL, CHIEF JUSTICE.

This is a proceeding to lower the valuation placed on real estate by the county assessor of Beltrami County for tax purposes for the year 1952. The respondents prevailed. Judgment was entered and petitioner appeals from the judgment.

Petitioner owns a farm of 133.64 acres consisting of three contiguous parcels described as Government lots 3 and 4 and the SW¼ SW¼ less the S 165 feet of the E 212 feet of sec. 33, T. 147, R. 33. This land is bounded on the south by the city limits of Bemidji; on the east by Lake Bemidji; on the west by the 80-acre Pierce farm; and on the north by a platted area known as Algoma Park, the 20-acre Erickson farm, and undeveloped tracts known as the Payton land. Since it was homesteaded in 1909 petitioner's land, although it is not a very good farm for that purpose, has been continuously used as a dairy farm. In 1952 it had a gross income of $1,429.78 and a net income of $476.67.

For the purpose of determining taxes for the year 1952, the township assessor assessed the petitioner's land as "rural" or farm land and placed a value on it in the total amount of $1,730.[1] This value was

---

[1]There is no dispute as to the valuation placed upon the buildings and their value is not included in any of the valuations stated.

about the same per acre as that placed upon adjacent and nearby farm land in that vicinity. The county assessor, however, increased the total valuation to $17,877 and changed the classification of the land from "rural" to "urban" so as to increase the percentage applicable in determining assessed valuation.[2] Upon application for abatement the county board reclassified the land from "urban" to "rural" and reduced the valuation of the county assessor to $13,646.

After trial the lower court found that the full and true value of the land was not less than that fixed by the county assessor but that the tracts were "rural in character," and assessable as class 3b land. Based upon the valuation, as abated, the tax for the year 1952 was fixed at $794.95 and judgment entered in favor of the respondents.

■   Petitioner contends that her lands were valued far in excess of their full and true value and in a discriminatory manner. M. S. A. 273.11 provides that all property shall be assessed at its "true and full value in money." This phrase is defined in § 272.03, subd. 8, as:

"* * * the usual selling price at the place where the property to which the term is applied shall be at the time of assessment; being the price which could be obtained at private sale and not at forced or auction sale."

The county assessor, real estate men, and others testified as witnesses for respondents that petitioner's land was adaptable for residential use and they valued it, for the most part, on a front-foot basis. The petitioner's witnesses, on the other hand, valued the land as farm land on an acreage-use basis as is customary with rural property. The difference in the market value placed upon the land resulting from the

---

[2]M. S. A. 273.13, subd. 6, provides in part:

"All real estate which is rural in character and devoted or adaptable to rural but not necessarily agricultural use, except as provided by class one hereof, and which is used for the purposes of a homestead, shall constitute class three 'b' and shall be valued and assessed at 20 percent of the full and true value thereof. If the full and true value is in excess of the sum of $4,000, the amount in excess of that sum shall be valued and assessed as provided for by class 3 [33 1/3 percent]."

Subd. 7 provides that "All other real estate" shall constitute class 3c and shall be valued and assessed on a 25- to 40-percent basis.

two methods used is very substantial. Petitioner argues that since her land was in fact used and classified as "rural in character" it cannot properly be valued on the same basis as urban property.

The classification of land under the provisions of § 273.13 as "rural" is dependent to a large extent upon the specific use to which the land is devoted at the time of the classification.[3] On the other hand this court has held that a determination of market value necessarily includes consideration of all the uses to which the land is naturally adapted regardless of whether the land is devoted to these uses.[4] Consequently, the fact that petitioner's land was classified as "rural" for the purposes of § 273.13 is of little consequence in determining its market value.[5]

The majority of this court is of the opinion that the record adequately supports the conclusion that at the time of the assessment the demand for petitioner's land for residential purposes was neither remote nor speculative and was a factor which enhanced the market value of the land. As in ordinary civil actions, the trial court's findings in tax proceedings must be sustained if reasonably supported by the evidence as a whole.[6] This court holds, therefore, that it cannot disturb the finding of the trial court that the valuation of petitioner's land was not excessive.

■ Several tracts of farmland in the vicinity of the petitioner's land, including the Pierce, Erickson, and Payton lands, were valued by the township assessor on a farmland or acreage-use basis with a resulting valuation far below that placed upon the petitioner's land by the county

---

[3]Staples v. State, 233 Minn. 312, 46 N. W. (2d) 651.

[4]See, Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 449, 277 N. W. 394, 399, 124 A. L. R. 897, 903 (condemnation proceedings). For other factors to be considered in determining market value, see M. S. A. 273.12; Schleiff v. County of Freeborn, 231 Minn. 389, 43 N. W. (2d) 265.

[5]See In re Delinquent Real Estate Taxes, 149 Minn. 335, 183 N. W. 671, where it is noted that the value of property should not be given any special significance in determining at what percentage of the true value it should be assessed.

[6]Lindahl v. State, 244 Minn. 506, 70 N. W. (2d) 866; State v. Oliver I. Min. Co. 198 Minn. 385, 270 N. W. 609.

assessor and the trial court. It is clear from our decision in In re Petition of Hamm v. State, 255 Minn. 64, 95 N. W. (2d) 649, that even though land is assessed at less than its true value, which is customary practice in this and other states, the market valuation placed upon it must not be substantially in excess of the market valuation placed upon other property of the same class.[7] Both the uniformity clause of Minn. Const. art. 9, § 1, and the equal-protection clause of U. S. Const. Amend. XIV prohibit substantial inequality in the apportionment of taxes.

The respondents justify the use of the different methods of valuation on the ground that the petitioner's land abuts Lake Bemidji which makes it very desirable for residential use, more so than the adjoining property. In her brief petitioner specifically disclaims that the adjoining and nearby properties were undervalued. She claims that her property is of the same kind and used for the same purpose; that it must, therefore, be valued on the same basis. The mere application of different methods of valuation does not, in itself, however, necessarily result in discrimination. To the contrary, it would be improper for an assessor to use a standard method of valuation if it did not consistently reflect true market values. As pointed out in the Hamm case (255 Minn. 70, 95 N. W. [2d] 654):

"* * * Neither does uniformity permit the adoption of an arbitrary yardstick of valuation for all properties which ignores their differences in actual market value. [Citing case.]"

The majority of this court holds that, in the absence of a showing of actual undervaluation of the adjoining and nearby properties, the petitioner's claim of discrimination, based merely upon the different methods of valuation used, is not well founded and that the judgment should be affirmed.

In my opinion the judgment ought to be reversed. While it is true that there is substantial evidence that at the time of the assessment there was demand for petitioner's land for residential purposes and that this is a factor which enhanced its market value, it is also true

---

[7]See, also, Renneke v. County of Brown, 255 Minn. 244, 97 N. W. (2d) 377.

that there is substantial, and to me more convincing, evidence to the contrary. Considering the evidence as a whole, as we must do,[8] I am of the opinion that the trial court reached the wrong result. As I see it, the present use to which the land is being put should be controlling in determining valuation where that use is consistent with the use to which the majority of adjoining property is being devoted. This is not a situation where petitioner's farm is surrounded by urban development. This land is all located out in the country. The potential use upon which the county assessor made his valuation is not, in my opinion, a present potential use but rather is based upon speculation that, at some time in the future, it will be in demand for residential purposes. This is not a case in which the petitioner is holding back and refusing to sell her lakeshore frontage for residential purposes. Since her husband's death the petitioner and her son have carried on as dairy farmers in the same manner as he did from the time that he received the patent to the land in 1909 and petitioner desires to so continue. The evidence shows that she has, in the past, sold nine lots for residential purposes, and from the evidence it is reasonable to infer that in all likelihood she will sell more lots as the opportunity presents itself. To increase the valuation of her land now, as was done here, results, in the light of the record as a whole, in gross inequality of taxation. Here the entire net income of the farm for 1952 plus the additional sum of $318.28 is being taken for taxes that year. As previously pointed out, the uniformity clause of Minn. Const. art. 9, § 1, and the equal-protection clause of U. S. Const. Amend. XIV prohibit this. Until such time as the development of the adjoining properties, as well as petitioner's land, properly indicates that this demand for more residential lots actually exists, it appears to me that to use the method of valuation applied here by the majority results in a discriminatory assessment.

Affirmed.

LOEVINGER, JUSTICE.

I am in agreement with the views expressed by Mr. Chief Justice Dell and am of the same opinion that he is that the judgment should be reversed.

---

[8]See footnote 6.