**Jeffrey T. WALKER, Individually and as Mayor of Cohasset, City of Cohasset and J.R. Properties, a Minnesota Partnership, Respondents,**

v.

**ITASCA COUNTY AUDITOR Robert Zuehlke; St. Louis County Auditor Gordy McFaul; Aitkin County Auditor Alice Dotzler; Cook County Auditor Carol Gresczyk; Lake County Auditor Steven McMahon; Crow Wing County Auditor Roy Luukkonen; and State of Minnesota, Appellants.**

No. C9–00–1863.

Court of Appeals of Minnesota.

April 10, 2001.

Phillip R. Krass, Krass Monroe, P.A., Bloomington, MN, for respondents.

Michael A. Hatch, Minnesota Attorney General, Bradford S. Delapena, Assistant Attorney General, James W. Neher, Assistant Attorney General, St. Paul, MN, for appellants.

Considered and decided by HARTEN, Presiding Judge, CRIPPEN, Judge, and HANSON, Judge.

## OPINION

HANSON, Judge.

Taxpayers challenge the constitutionality of the Taconite Tax Relief Area Fiscal Disparities Act, Minn.Stat. §§ 276A.01–09 (2000), contending that it violates the uniformity clause of the Minnesota Constitution. Minn. Const. art. X, § 1. The district court found the act unconstitutional and the state and the affected counties appeal. We reverse.

## FACTS

In 1941, the Minnesota Legislature established the taconite production tax, which was imposed in lieu of local property taxes. Minn.Stat. § 298.22 (1941). Under the initial law, three-fourths of the revenue generated by the taconite production tax was redistributed among local taxing districts to replace preempted property tax revenues.

In 1969, the legislature created the Taconite Tax Relief Area ("TTRA"), consisting of all areas within a school district containing a municipality that had a particular valuation of unmined iron ore or a qualifying taconite facility. Minn.Stat. § 273.134 (2000). The resulting area covers all or part of Aitkin, Cook, Crow Wing, Itasca, Lake, and St. Louis counties. Under related statutory provisions, taconite production tax revenues are pooled and distribut-

ed among TTRA municipalities in a variety of forms, including property-tax subsidies, funding of public schools and community-development grants from the Iron Range Resources and Rehabilitation Board. See Minn.Stat. §§ 273.136, 298.22, .28, 471.58 (2000). This revenue sharing was designed to promote economic diversity in Minnesota's iron range. The funds collected and distributed under the taconite production tax are a major source of revenue to the governmental units in the TTRA, with annual proceeds approaching $95 million in 1999.

In 1996, the Minnesota Legislature passed the Taconite Tax Relief Area Fiscal Disparities Act (the "Range Act"), as an extension of the regional revenue sharing scheme. See Minn.Stat. §§ 276A.01–.09 (2000) (codifying 1996 Minn. Laws ch. 471, art. 11). Under the Range Act, a municipality that is within the TTRA (and is thus a recipient of the shared taconite production tax) must contribute 40% of the revenues derived from the annual growth in its commercial-industrial property tax base to a regional pool. Every TTRA municipality then receives a distribution from the regional pool based largely upon its population. Municipalities experiencing no growth in property tax base make no contribution to the fund, but still receive a distribution; municipalities experiencing growth in property tax base may well contribute more to the pool than they receive in distributions. The effect is a redistribution of tax revenues throughout the region based upon the legislature's recognition that commercial-industrial growth throughout the TTRA has benefited from, and perhaps was produced by, the sharing of the taconite production tax revenues.

Respondents challenge the constitutionality of the Range Act, alleging that it violates the uniformity clause of the Minnesota Constitution (Minn. Const. art. X, § 1) because the burdens imposed on the taxpayers in some municipalities far outweigh the benefits received. The district court agreed, ordered that the imple-mentation of the Range Act cease and stayed its order pending final resolution of this issue on appeal.

## ISSUE

Did the district court err in holding that the Taconite Tax Relief Area Fiscal Disparities Act violates the uniformity clause of the Minnesota Constitution?

## ANALYSIS

■ The review of a challenge to the constitutionality of a statute is a question of law and this court need not adhere to the district court's judgment. *In re Blilie,* 494 N.W.2d 877, 881 (Minn.1993). State statutes receive the benefit of a presumption of constitutionality, and the judicial power "to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty,* 448 N.W.2d 363, 364 (Minn.1989) (citation omitted). In fact, the party seeking a ruling of unconstitutionality must prove "beyond a reasonable doubt a violation of some provision of the Minnesota Constitution." *Id.* Particular caution is necessary when ruling upon the constitutionality of an exercise of the legislature's power of taxation:

Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the *most explicit demonstration that a classification is a hostile and oppressive discrimination* against particular persons and classes.

*Village of Burnsville v. Onischuk,* 301 Minn. 137, 151, 222 N.W.2d 523, 531 (1974) (quotation omitted) (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 41, 93 S.Ct. 1278, 1301, 36 L.Ed.2d 16 (1973)), *appeal dismissed,* 420 U.S. 916, 95 S.Ct. 1109, 43 L.Ed.2d 388 (1975) (emphasis added).

■ The uniformity clause of the Minnesota Constitution requires that taxes enacted by the legislature "shall be uni-

form upon the same class of subjects." Minn. Const. art. X, § 1. The court has required uniformity with respect to both the levy and distribution of taxes. *City of Jackson v. Jackson County*, 214 Minn. 244, 247, 7 N.W.2d 753, 755 (1943). Like the equal protection clause of the Fourteenth Amendment of the United States Constitution, the uniformity clause serves to "prohibit substantial inequality in the apportionment of taxes." *Wagner v. Commissioner of Taxation*, 258 Minn. 330, 334, 104 N.W.2d 26, 29 (1960). A tax statute is constitutional if it is based upon "a reasonable relationship to the apportionment of the taxes and the benefit to be derived by that segment of our population required to bear the financial burden." *Visina v. Freeman*, 252 Minn. 177, 195, 89 N.W.2d 635, 650 (Minn.1958).

The Minnesota Supreme Court has previously considered the constitutionality of a similar fiscal disparities taxation law in *Onischuk*. There, the supreme court reversed a judgment that the Metropolitan Fiscal Disparities Act of 1974 ("MFDA") was unconstitutional under the uniformity clause. 301 Minn. at 154, 222 N.W.2d at 533. The MFDA requires municipalities in the seven-county Twin Cities metropolitan area to contribute 40% of the increased revenue derived from growth in commercial-industrial property tax base to a regional pool from which all municipalities receive distributions based largely upon their population. Minn.Stat. § 473F.07 (2000). In finding the MFDA constitutional, the supreme court expanded the traditional concept of tax benefit:

> The fiscal disparities statute is a bold and imaginative departure from conventional devices for balancing the benefits and burdens of taxation. * * * [W]e are quick to concede that a strict application of our prior decisions would require us to lean strongly for affirmance. * * * Nevertheless, we are today dealing with a viable, fluid, transient society where traditional concepts of what confers a tax benefit may be too parochial.

*Onischuk*, 301 Minn. at 152, 222 N.W.2d at 532. The court recognized that

> the benefits conferred on residents of a particular municipality because of the location of commercial-industrial development within its boundaries may far exceed the burdens imposed on that municipality by virtue of the additional cost of servicing and policing the particular development which has located there.

*Id.* at 153, 222 N.W.2d at 532. The court combined this recognition with its acceptance of the theory it found embedded in the MFDA:

> [T]he residents of highly developed commercial-industrial areas * * * enjoy direct benefits from the existence of adjacent municipalities which provide open spaces, lakes, parks, golf courses, zoos, fairgrounds, low-density housing areas, churches, schools, and hospitals.

*Id.* In addition, the court placed significant emphasis on its need to defer to the legislature on matters of taxation, because the legislature "enjoys a familiarity with the problems of fiscal disparities which is denied the courts." *Id.* at 153, 222 N.W.2d at 533. The court concluded:

> The presumption of constitutionality which the statute enjoys has not been overcome by an explicit demonstration that its application results in a "hostile and oppressive discrimination" against the residents of particular units of government.

*Id.* at 153–54, 222 N.W.2d at 533.

In finding the Range Act unconstitutional, the district court focused too narrowly upon the factual environment in *Onischuk*. The district court found that the Taconite Tax Relief Area does not possess the social and economic integration and interdependence that inspired the *Onischuk* court to extend the traditional concept of tax benefits for the metropolitan area. We find this factual distinction unavailing. While the municipalities within the TTRA do not derive similar benefits from social or economic integration, they

do derive substantial benefits from the sharing of the taconite production tax, sufficient to justify the burdens imposed by the Range Act.

The district court ignored the benefits from the sharing of taconite production taxes, concluding they were derived from "unrelated legislation." This was erroneous.

First, the TTRA and the Range Act are not "unrelated." To the contrary, the legislative history makes it clear that the Range Act was a natural outgrowth of the TTRA—the sharing of the taconite production tax revenue finances the economic development efforts that help produce the growth in the commercial-industrial property tax base.

Second, the Minnesota Supreme Court has already held that the benefits of sharing the taconite production tax may be used to support an extension, in separate legislation, of revenue sharing within the TTRA. In *United States Steel Corp. v. State of Minnesota*, 324 N.W.2d 638, 645 (Minn.1982), the court held that the additional burdens imposed on the TTRA municipalities, by distributing local ad valorem property taxes to the Iron Range Resources and Rehabilitation Board under a 1974 legislative extension of the regional revenue sharing scheme (Minn.Stat. § 273.02 (2000)), were justified by the benefits received from sharing taconite production taxes. The court noted:

> As all parties agree, the traditionally rigid standards governing what constitutes burdens and benefits have been considerably relaxed in this state and elsewhere in recent years.

*Id.* at 644. The court also quoted *Onischuk* in concluding that the distribution of property taxes was constitutional under the uniformity clause:

> [W]e are of the opinion that it is no longer necessary for units of government providing tax revenue to receive the kind of tangible and specific benefits to which our court has previously referred in order to satisfy the uniformity clause.

*Id.* at 645 (quotation omitted).

There is no question that taxpayers in the TTRA have benefited greatly from taconite production tax revenues. The essential question before us is whether the benefits derived from an existing tax can be considered to justify the burdens of a new tax. We find ample guidance from the *Onischuk* and *United States Steel Corp.* decisions to conclude that they can and that the Range Act, as an outgrowth of taconite production tax revenue sharing, satisfies the uniformity clause of the Minnesota Constitution.

## DECISION

The district court erred in holding that the Taconite Tax Relief Area Fiscal Disparities Act, Minn.Stat. §§ 276A.01–09 (2000), was unconstitutional under the uniformity clause of the Minnesota Constitution.

**Reversed.**