Michael A. WEED, Relator,

v.

COUNTY OF FILLMORE, Respondent.

No. C6–01–48.

Supreme Court of Minnesota.

July 26, 2001.

Matthew J. Opat, Chatfield, for respondent.

Michael A. Weed, Spring Valley, pro se.

## OPINION

RUSSELL A. ANDERSON, Justice.

Relator Michael A. Weed appeals from the tax court judgment that his one-acre agricultural homestead in respondent County of Fillmore (the county) has an estimated market value of $8,000 as of January 2, 1999.[1] We consider whether the evidence reasonably supports the tax court's decision and we affirm.

In 1975, relator purchased for $1,000 an old house on three acres of land along the

---

1. "In every year, on January 2, the assessor shall also assess all real property that may have become subject to taxation since the last previous assessment * * *." Minn.Stat. § 273.17, subd. 1 (2000). Taxes based upon January 2 assessments are payable the following year. *See* Minn.Stat. § 275.065, subd. 1(a) (2000).

south branch of the Root River in Forestville Township in Fillmore County. The house, which relator restored and eventually made his home, is serviced by a well and septic system. According to relator, the septic system is 25 years old and "the well is 20 feet deep and provides very limited amounts of occasionally polluted water." Relator testified that access to the property is by permanent easement. According to relator, in 1983 Forestville Township vacated a township road that provided access to his property. In exchange for a permanent access easement over neighboring land, he agreed not to sue the township for any loss of value to his property resulting from vacation of the township road. Relator currently accesses his property by a bridge which he built over the river.

For tax purposes, two of relator's three acres are classified agricultural and one acre, the home site, is classified agricultural homestead.[2] The land of an agricultural homestead must be valued separately from the dwelling.[3] Relator does not contest the assessor's valuation of his two agricultural acres at $450 each or the assessor's valuation of relator's house at $2,600. Relator does contest, however, the $8,000 valuation of the agricultural homestead land. According to respondent, relator's total taxes for the year 2000 were less than $100 on the entire parcel.

After the township board and the county board of equalization denied relator's request to reduce the assessor's estimated market value from $8,000 to $300 for the agricultural homestead land, relator petitioned the tax court for relief.[4] Following trial, the tax court concluded that, as of January 2, 1999, the subject property's estimated market value was $8,000. The tax court explained that in reaching its determination of estimated market value, it relied heavily upon the sales approach.[5] The tax court explained

2. See Minn.Stat. § 273.13, subd. 23 (2000). The agricultural homestead is "agricultural land including any improvements that is homesteaded." Id., subd. 23(a); see also Minn.Stat. § 273.124, subd. 1(a) (2000) ("Agricultural land * * * that is occupied and used as a homestead by its owner * * * is an agricultural homestead."). Section 273.13, subdivision 23(a), equates the market value of the house, garage, and immediately surrounding acre of an agricultural homestead with the class rate for residential homesteads under Minn.Stat. § 273.13, subd. 22(a) (2000).

3. By statute, the house is valued separately from the land on which it sits. Minn.Stat. § 273.11, subd. 1 (2000); Minn.Stat. § 273.13, subd. 23 ("The assessor shall determine and list separately on the records the market value of the homestead dwelling and the one acre of land on which that dwelling is located.").

4. A town board typically is the governing body that reviews and approves property assessments. Minn.Stat. § 274.01, subd. 1 (2000). A property owner who disagrees with the assessment and does not receive satisfaction from the township board of review may appeal to the county board of equalization, which reviews and equalizes the assessment of property of the county. Minn.Stat. § 274.13 (2000). A dissatisfied property owner then may appeal to the Tax Court, which, but for appeal to this court, is the exclusive and final authority for the determination of questions of law and fact arising under the tax laws of this state. Minn.Stat. § 271.01, subd. 5 (2000).

5. We recognize three traditional approaches to determining the market value of real estate. The sales approach, comparing prices paid for comparable properties sold in market transactions; the cost approach, comparing the cost of building a new property with the same utility as the subject property; and "the income approach, predicated on the capitalization of the income the property is expected to generate." Marquette Bank Nat'l Ass'n v. County of Hennepin, 589 N.W.2d 301, 306 (Minn.1999). "[W]e afford the tax court broad discretion in deciding which valuation approach to use." Id.

the procedures necessary to verify the reliability of the sales approach: research of the sales data, verification of the data "as accurate and representative of arm's-length transactions," selection of relevant sales for comparison, comparison of the sales with the subject property, adjustment of the price for various elements of comparison, and reconciliation of multiple indications of value into a single value or range of value.

The county supported its valuation of the subject property with a formal appraisal report, received into evidence at trial, and testimony from two assessors. The tax court concluded that the report and testimony were reliable.[6] The tax court explained that the six sales relied upon by the county in its report were of properties appropriately comparable to the subject property because of dates of sale, condition, and location. All six of the properties were classified, like the subject property, as agricultural homestead sites and all had wells and septic systems.

By contrast, relator offered his written summary of the sales of 84 properties but acknowledged that not all of the sales were relevant. The tax court sustained the county's objection to receipt of the relator's written summary of 84 sales but relator was allowed to select from his summary and to testify about four sales of property he considered most comparable to the subject property. The tax court received certificates of real estate value[7] for each of the four sales upon which rela-

tor relied. When the tax court issued its decision, it explained that the four sales upon which relator relied were properties that did not have wells and septic systems and had not been adjusted for size. The tax court also explained that there was no evidence that the sales were arm's-length transactions. The tax court determined that the sales upon which relator relied were not comparable to the subject property and the tax court could not rely on them to determine a value for the subject property.

Relator appeals to this court arguing that the tax court erred by considering use and classification of the subject property to determine its value. Relator contends that the tax court instead should have admitted into evidence relator's written summary of 84 property sales for land only and should have considered evidence of the four sales of property relator considered most comparable to the subject property. Relator further argues that the well and septic system are attached to the house and thus, for tax purposes, should be considered only in the separate valuation of the house. He argues that if the well and septic system are determined to be attached to the land, the assessor failed to take into account the age and condition of the well and septic system when he appraised the subject property. Relator further argues that the value of the subject property should have been reduced because of his limited access to it from a public road. Relator argues that the tax court should have concluded that the sub-

6. Although the tax court determined that the estimated market value of the subject property is $8,000, the tax court observed that the comparable sales relied upon by the county supported a valuation between $8,900 and $20,000.

7. If real estate is sold for more than $1,000, a certificate of real estate value must be filed with the auditor's office in the county in which the property is located when the deed or document is presented for filing. Minn. Stat. § 272.115, subd. 1 (2000). The certificate must include the sale price, classification to which the property belongs, and any financing terms and conditions of the sale necessary to determine the actual, present value of the sale price for purposes of a sales ratio study. *Id.*

ject property had a value of $300, not $8,000.

For tax purposes, property is to be valued at its market value, defined as "the usual selling price * * * which could be obtained at a private sale or an auction sale, if it is determined by the assessor that the price from the auction sale represents an arms length transaction." Minn. Stat. § 272.03, subd. 8 (2000). Relator carries the burden of proof of demonstrating that his property has been unfairly and inequitably assessed. *Short v. County of Hennepin (In re Objection to Real Prop. Taxes)*, 353 N.W.2d 525, 530 (Minn.1984). The tax court is the exclusive and final authority for the determination of questions of law and fact arising under the tax laws of this state, subject to review by this court. Minn.Stat. § 271.01, subd. 5 (2000). We review the tax court's legal decisions de novo. *Marquette Bank*, 589 N.W.2d at 304. Because determining the value of property is an inexact science, we defer to the tax court's decision unless the tax court clearly overvalued or undervalued the property or completely failed to explain its reasoning. *Equitable Life Assurance Soc'y v. County of Ramsey*, 530 N.W.2d 544, 552 (Minn.1995). We will sustain the tax court's property valuation unless the decision is clearly erroneous, meaning "that the evidence as a whole does not reasonably support the decision." *Marquette Bank*, 589 N.W.2d at 305. We must have a "definite and firm conviction that a mistake has been committed" before reversing a tax court decision valuing property. *Evans v. County of Hennepin*, 548 N.W.2d 277, 278 (Minn.1996).

We first consider relator's argument that the tax court erred by considering the use and classification of the subject property to determine its value. Relator ignores the legislative mandate that for tax purposes, agricultural property and agricultural homestead property are to be classified and valued separately and that the land and dwelling of an agricultural homestead are to be valued separately. *See* Minn.Stat. § 273.13, subd. 23; Minn.Stat. § 273.11, subd. 1. Not only does relator ignore the legislative mandate, he ignores the reality that agricultural homestead land has greater value than bare agricultural land, confirmed by the county's formal appraisal report and the testimony of its assessors.

Relying on our decision in *Wagner v. Comm'r of Taxation*, 258 Minn. 330, 104 N.W.2d 26 (1960), relator argues that a property's value does not depend on its present use or classification but only on its highest and best use. Relator contends that since certificates of real estate value do not include separate values for an agricultural homestead acre, agricultural acres, or buildings, the only way to determine the value of an acre for agricultural homestead land is to compare it with sales of agricultural acres. Relator argues that the tax court should have admitted into evidence relator's summary, derived from certificates of real estate value, of 84 "land-only" properties to determine the value of the subject property.

Relator's reliance on *Wagner* is misplaced. In *Wagner*, a dairy farm bounded by the city limits of Bemidji on the south and Lake Bemidji on the east was classified agricultural. *Wagner*, 258 Minn. at 331–32, 104 N.W.2d at 27. The township assessor assessed the property as rural with a value of $1,730 but the county assessor changed the classification to urban, increasing the property's total valuation to $17,877. *Id.* at 332, 104 N.W.2d at 27. The property owner applied for abatement and the county board reclassified the land as rural and valued the property at $13,646. *Id.* at 332, 104 N.W.2d at 27–28. The property owner appealed. *Id.* At tri-

al, real estate experts testified that the land had a higher and better use as residential property. *Id.* The trial court defined the property as "rural in character" but determined that the value of the land was not less than that fixed by the county assessor. *Id.* On appeal to this court, we affirmed the trial court. *Id.* at 334, 104 N.W.2d at 29.

█ We did not reject use and classification as the measure of a property's value but held that all factors must be considered including use and classification. *Id.* at 333, 104 N.W.2d at 28. Demand for the Wagner property for residential purposes was a factor that increased its value. *Id.* Relator urges us to reject the subject property's use and classification altogether and measure the property as agricultural rather than as agricultural homestead, a higher and better use which the legislature equates with the residential classification. Minn.Stat. § 273.13, subd. 23. Neither *Wagner* nor Minn.Stat. § 273.13, subd. 23, support relator's argument. We hold that a property's use and classification may be considered in the valuation of property.

█ In further support of his argument that the tax court should not consider a property's use and classification, relator contends that the tax court should have received into evidence relator's summary of 84 "land only" property sales to determine the value of the subject property and that the tax court should not have received into evidence the county's formal appraisal report. We will not disturb a tax court's evidentiary rulings absent legal error or abuse of discretion. *Marquette Bank,* 589 N.W.2d at 307. Relator acknowledges that not all of the 84 property sales in his summary were relevant. Relator's summary does not indicate which sales, if any, are of agricultural homesteads. Moreover, relator was permitted to select from his summary and give testimony about four

sales of property he considered most comparable to the subject property, although none had wells or septic systems. By contrast, the county's formal appraisal report included sales of agricultural homesteads which had been adjusted for differences between those properties and the subject property. We conclude that the tax court did not abuse its discretion by not receiving into evidence relator's summary and receiving into evidence the county's formal appraisal report.

█ Relator next argues that the tax court erred by including the property's well and septic system in the value of the land. Relator contends that the well and septic system should be included in the value of the house since the well and septic system are annexed to and integrated with the house by pipes. The county responds that the well and septic system are part of the land, that removing them would damage the land and that removing them from the house requires only the severing of pipes. The county assessor testified that the county consistently includes the well and septic system in its valuation of agricultural homestead land.

Buildings as real property include the structure and improvements annexed to them, integrated with them, and of permanent benefit. Minn.Stat. § 272.03, subd. 1(b) (2000). On the other hand, land as real property includes those things annexed to the land, on the land, and in the land. Minn.Stat. § 272.03, subd. 1(a) (2000). These definitions imply a direct connection to the building or to the land. The well and septic system are connected to the house only indirectly by pipes but are placed directly in and are surrounded by the land. Because the well and septic system have a direct connection to the land, the value of the well and septic system are appropriately considered part of the land for purposes of property valua-

tion. The tax court explained that the properties in the county's formal appraisal report with wells and septic systems were comparable to the subject property.

■ In the alternative, relator argues that if the well and septic system are valued with the land, the tax court ignored their age and dilapidated condition.[8] Relator offered no evidence quantifying the value of his well and septic system or comparing the condition of his well and septic system to the conditions of wells and septic systems on comparable properties. Relator has failed to carry his burden of proving that his property has been unfairly and inequitably assessed because of the condition of his well and septic system.

■ Relator also contends that limited access to his property decreases the value of the subject property. While the record regarding access is unclear,[9] it appears that access to the property is by way of a permanent easement over neighboring property and over the bridge that respondent built.

We have recognized that the lack of access to a public road affects a property's value. *Beer v. Minn. Power & Light Co.*, 400 N.W.2d 732, 735 (Minn.1987). Relator failed to quantify any decrease in property value attributable to the limited access or to compare the limited access of his property with comparable properties. Moreover, relator testified that he agreed to refrain from suing the township for any reduction in his property value in exchange for the permanent easement he was given when the township vacated the road. Relator has failed to prove that his

property has been unfairly and inequitably assessed because of limited access.

■ In summary, we conclude that the county's formal appraisal report of comparable sales of nearby agricultural homestead parcels with wells and septic systems, and the assessors' testimony as to how the county accounted and adjusted for differences between the comparable properties and relator's property, reasonably support the tax court's decision. We hold that the tax court did not abuse its discretion by not admitting relator's written summary of 84 sales, the evidence reasonably supports the tax court's decision, and relator has failed to prove that the tax court's decision was clearly erroneous.

Affirmed.

---

8. The county contends that the condition of the well and septic system were considered in determining the property's value, yet the assessor states in his appraisal report that he did not know the condition of relator's well and septic system but treated them as though

they were in the same condition as the wells and septic systems of the county's comparable properties.

9. The county provided no evidence regarding relator's access issue.