#25742-a-GAS

**2011 S.D. 49**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DONALD STEHLY and
GENE STEHLY,                                   Plaintiffs and Appellants,

    v.

DAVISON COUNTY, a governmental
subdivision of the State of South Dakota,
KATHY GOETSCH, Davison County
Assessor, DAVID WEITALA, RICHARD
ZIEGLER, JERRY FISCHER, GERALD
WEISS and JOHN CLAGGETT,
Davison County Commissioners,                  Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE SEAN M. O'BRIEN
Judge

\* \* \* \*

CARL J. KOCH
Mitchell, South Dakota                         Attorney for plaintiffs
                                               and appellants.


JAMES D. TAYLOR
Davison County Deputy
  State's Attorney
Mitchell, South Dakota                         Attorneys for defendants
                                               and appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 25, 2011

OPINION FILED **08/24/11**

#25742

SEVERSON, Justice

[¶1.]        In 2007, Davison County adopted a county-wide plan to reassess

agricultural structures. The County reassessed agricultural structures in four of its

twelve townships that year. The new valuations in the four reassessed townships

were generally higher than the existing valuations in the County's eight other

townships. Donald and Gene Stehly, who own agricultural structures in the four

reassessed townships, initiated this declaratory judgment action, alleging that the

plan to reassess four townships each year created an unconstitutional lack of

uniform taxation within the County. The trial court concluded that the Stehlys'

claim failed because they did not establish lack of uniformity within a single taxing

district. We affirm.

## Background

[¶2.]        In 2007, Kathy Goetz, the Davison County Director of Equalization,

discovered discrepancies in the County's assessments of agricultural structures.

While some individuals were paying taxes on agricultural structures that no longer

existed, others were not paying taxes on newly-constructed structures. On Goetz's

recommendation, the County developed a plan to reassess all agricultural

structures in the County over a three-year period.[1] Beginning in 2007, agricultural

---

1.        SDCL 10-11-2 provides:

> Whenever the county auditor shall discover or receive credible
> information, or if he shall have reason to believe that any real
> property has from any cause been omitted, in whole or in part,
> in the assessment of any year or number of years, he shall
> proceed to correct the assessment rolls and add such property
> thereto, with the valuation.

structures in four of the County's twelve townships were to be reassessed each year for the next three years to complete reassessment of the entire county. The reassessments were to be placed on the assessment rolls as they were ascertained.

[¶3.]        The County began the reassessment process in the four townships with the greatest number of agricultural structures: the Blendon, Badger, Baker, and Tobin townships. Agricultural structures in the County's other eight townships were not reassessed in 2007; they were to be reassessed in either 2008 or 2009. Unless new agricultural structures were constructed or existing structures changed in use or condition, the assessments in those eight townships remained unchanged. The reassessed valuations were placed on the 2008 assessment roll for taxes payable in 2009.

[¶4.]        The new valuations in the four reassessed townships were generally higher than the existing valuations in the County's other eight townships. For example, a grain bin with ventilated floors in one of the four reassessed townships was valued at $1.90 per bushel of storage after reassessment, but the valuation for a similar facility in one of the County's other eight townships remained at $1.05 per bushel. The reassessment created a 80.9% increase in valuation. Similarly, a grain bin without ventilated floors in one of the four reassessed townships was valued at $1.35 per bushel of storage after reassessment, but the valuation for a similar facility in one of the County's other eight townships remained at $0.85 per bushel. This change caused a 58.8% increase. Finally, the new valuation for pole buildings in the four reassessed townships was approximately 25% higher after reassessment than for similar facilities in the County's other eight townships. Evidence

presented at trial established that the new valuations were the full and true value of agricultural structures in the four reassessed townships.

[¶5.]      The Stehlys own agricultural structures in the Badger Township, which was reassessed in 2007. While Donald Stehly's taxes on his agricultural structures before the reassessment totaled $1,320.00, his taxes after the reassessment totaled $2,139.38. Thus, the reassessment of Donald Stehly's agricultural structures resulted in an $819.38 tax increase for the 2009 tax year. No evidence was presented at trial concerning the tax increase Gene Stehly or other individuals who owned agricultural structures in the four reassessed townships incurred due to the reassessment.

[¶6.]      In August 2008, the Stehlys initiated this declaratory judgment action against the County, alleging that the plan to reassess four townships each year created an unconstitutional lack of uniform taxation within the County. The Stehlys asked the trial court to issue a writ of mandamus ordering the Davison County Assessor to "implement, prepare, and present to the Davison County Commissioners for their approval an assessment roll" that was constitutional. After a court trial, the trial court concluded that the Stehlys' claim failed because they did not establish lack of uniformity within a single taxing district. The Stehlys appeal.

## Standard of Review

[¶7.]      An appeal asserting a violation of a constitutional provision is a question of law reviewed under the de novo standard of review. *W. Two Rivers Ranch v. Pennington Cnty.*, 2002 S.D. 107, ¶ 8, 650 N.W.2d 825, 827 (per curiam) (citing *Jackson v. Weber*, 2001 S.D. 136, ¶ 9, 637 N.W.2d 19, 22). "Under the de

novo standard of review, we give no deference to the [trial] court's conclusions of law." *In re Guardianship of S.M.N., T.D.N., and T.L.N.*, 2010 S.D. 31, ¶ 10, 781 N.W.2d 213, 218 (citing *Sherburn v. Patterson Farms, Inc.*, 1999 S.D. 47, ¶ 4, 593 N.W.2d 414, 416). But the trial court's findings of fact "are reviewed under the clearly erroneous standard." *Id.* ¶ 11 (quoting *In re Guardianship and Conservatorship of A.L.T. & S.J.T.*, 2006 S.D. 28, ¶ 37, 712 N.W.2d 338, 347).

## Analysis and Decision

[¶8.] The Stehlys challenge the County's reassessment plan under article XI, section 2, of the South Dakota Constitution:

> To the end that the burden of taxation may be equitable upon all property, and in order that no property which is made subject to taxation shall escape, the Legislature is empowered to divide all property including moneys and credits as well as physical property into classes and to determine what class or classes of property shall be subject to taxation and what property, if any, shall not be subject to taxation. Taxes shall be uniform on all property of the same class, and shall be levied and collected for public purposes only.

The constitutional mandate for uniform taxation requires uniform tax assessments within a particular taxing district. *W. Two Rivers Ranch*, 2002 S.D. 107, ¶ 9, 650 N.W.2d at 827 (quoting 71 Am. Jur. 2d *State and Local Taxation* § 124 (2001)).

[¶9.] The Stehlys bear the burden of presenting sufficient evidence to overcome the presumption that the County's reassessment plan is "in accordance with the law."[2] *In re Brookings Assoc.*, 482 N.W.2d 873, 876 (S.D. 1992) (citing

---

2. The presumption that the County's valuation of property is correct has been superseded by statute. SDCL 10-3-16 (providing that "[n]o legal presumption of correctness attaches to the [D]irector's assessed valuation of property"). *See also Smith v. Tripp Cnty.*, 2009 S.D. 26, ¶ 14, 765 N.W.2d 242, 247-48;

(continued . . .)

*Skinner v. N.M. State Tax Comm'n*, 345 P.2d 750, 753 (N.M. 1959)). A tax assessment is unconstitutional if it "lacks uniformity and is grossly inequitable without regard to the full and true value of the property." *Kindsfater v. Butte Cnty.*, 458 N.W.2d 347, 350 (S.D. 1990) (citing *In re Butte Cnty.*, 385 N.W.2d 108, 113 (S.D. 1986); *Knodel v. Bd. of Cnty. Comm'rs of Pennington Cnty.*, 269 N.W.2d 386, 389 (S.D. 1978)). While "exact uniformity and mathematical accuracy in [assessments is] absolutely impossible, there must be substantial compliance with the legislative directives[.]" *Codington Cnty. v. S.D. Bd. of Equalization*, 433 N.W.2d 555, 558-59 (S.D. 1988) (citations omitted).

[¶10.]    The crux of the dispute in this case is what constitutes a taxing district under South Dakota law. The Stehlys argue that the plan to reassess four townships each year created an unconstitutional lack of uniform taxation within the County. But the County contends that counties are assessment districts and that townships are taxing districts. Because the Stehlys presented no evidence at trial demonstrating a lack of uniformity within the four reassessed townships, the County maintains that their claims must fail.

---

(. . . continued)

> *Beals v. Wagner*, 2004 S.D. 115, ¶ 7 n.4, 615 N.W.2d 415, 418 n.4. Nonetheless, we believe the County's reassessment plan must be presumed constitutional. *See Feist v. Lemieux-Feist*, 2010 S.D. 104, ¶ 3, 793 N.W.2d 57, 59 ("There is a strong presumption that the laws enacted by the Legislature are constitutional and that presumption is rebutted only when it clearly, palpably, and plainly appears that the statute violates a provision of the Constitution.") (quoting *Burlington N. R.R. Co. v. Green*, 2001 S.D. 48, ¶ 18, 624 N.W.2d 826, 831).

[¶11.]      South Dakota law does not define the term "taxing district," and we have never before considered whether townships are taxing districts. We begin our analysis with an overview of the process for the annual assessment of property taxes. A county's director of equalization annually assesses all taxable property within the county. SDCL 10-3-16. The director of equalization then prepares assessment rolls for each township, municipality, or other district in the county and delivers those rolls to the local boards of equalization. SDCL 10-3-28. If a township is organized, it is vested with the powers of a local board of equalization. SDCL 10-11-13. Otherwise, the county board of equalization serves as the local board of equalization. SDCL 10-11-26. The local boards of equalization for the various overlapping townships, municipalities, and school districts in the county meet to equalize the assessment of all taxable property within their districts. SDCL 10-11-13. When equalization is complete, the local boards of equalization deliver the assessment rolls to the director of equalization. SDCL 10-11-21. The county treasurer sends a bill and collects all taxes whether levied for state, county, township, municipality, school, or other purposes. SDCL 10-21-1. The county treasurer pays those funds to the districts to which they belong. SDCL 10-21-27.

[¶12.]      Our statutes do not define the term "taxing district," but SDCL 10-11-27 provides guidance in determining whether townships are taxing districts:

> No complaint concerning property assessed in any district having a local board of equalization shall be considered unless it has first been made to such local board, except a nonresident owner or nonresident taxpayer of the taxing district may be heard without such original complaint.

The term "taxing district" as used in SDCL 10-11-27 refers to a district that is vested with the powers of a local board of equalization. Because an organized township is vested with equalization powers, we believe that it is a "taxing district." *See* SDCL 10-11-13. South Dakota counties have operated under this understanding of our statutes. *See, e.g.,* 1993-94 S.D. Op. Att'y Gen. 4 (interpreting SDCL 10-11-27 and defining a taxing district as any district "vested with the powers of a local board of equalization"). The language of other statutes supports the conclusion that townships are taxing districts.[3]

---

3.      For example, SDCL 10-6-1(2) provides that the term "district" means a "township, municipality or ward, as the case may be[.]" And SDCL 4-11-5 provides:

> The auditor-general is also authorized to make examinations of the books and accounts of the offices of all municipalities, *townships*, and school districts when called upon by the governing board of any *such taxing district*, or upon request by petition when signed by twenty percent of the resident taxpayers of *such taxing district*[.]

(Emphasis added.) SDCL 10-12-36 similarly provides:

> If the governing body of any county, municipality, or *township* determines that the amount of taxes which many be levied under the rates limited by this chapter will be insufficient to meet the needs of *the taxing district* for the current year, the question of an increased levy may be submitted to the voters thereof at a special election[.]

(Emphasis added.) And finally, SDCL 4-2-13 provides:

> *Any taxing district* which is not otherwise required by law to have an annual audit of its financial records conducted by the Department of Legislative Audit or by an auditor approved by the Department of Legislative Audit, shall file an annual report of the district's financial affairs with the Department of

(continued . . .)

[¶13.]     Although this Court has not addressed whether our Constitution requires uniform taxation within townships, we have recognized that uniformity is required in other districts vested with the powers of a board of equalization. In *Kramar v. Bon Homme County*, a taxpayer challenged a statute that taxed property in school districts that operated a high school differently than property in school districts that did not operate a high school. 83 S.D. 112, 155 N.W.2d 777 (1968) (per curiam). But school districts are vested with equalization powers. SDCL 10-11-13. Because the imposed tax was "uniform upon property in the same class in each common school district," uniformity within each particular taxing district was achieved. 83 S.D. at 117, 155 N.W.2d at 779.

[¶14.]     In this case, the trial court concluded that the Stehlys' claims failed because they did not establish a lack of uniform taxation within the four reassessed townships. Yet the Stehlys argue that counties are also taxing districts. Although SDCL 10-3-16 provides that counties are "assessment districts," they are vested with limited equalization powers and levy taxes for their own purposes. *See* SDCL 10-11-26, -12-8. The language of SDCL 10-12-7 supports the view that counties are taxing districts: "The amount of . . . levies made by . . . *taxing districts except counties* shall be certified to the county auditor of the county by the clerk or

_____

(. . . continued)
        Legislative Audit within ninety days of the close of the district's fiscal year. *However, this section does not apply to townships.*

    (Emphasis added.)

corresponding officer of the taxing district[.]" (Emphasis added.) We thus believe counties are both assessment districts and taxing districts.

[¶15.] In *West Two Rivers Ranch v. Pennington County*, the ranch argued that the assessment of its property in Pennington County at an amount twice the assessment of its property in Meade County was unconstitutional for lack of uniformity. 2002 S.D. 107, 650 N.W.2d 825. But comparing the assessment of the Pennington County property to the assessment of the Meade County property was not relevant as the comparison involved property in separate taxing districts. *Id.* ¶ 14. Because the tax assessments within each county were uniform, the tax was constitutional. *Id.* ¶ 10 (quoting and discussing *Bon Homme Cnty. Farm Bureau v. Bd. of Comm'rs of Bon Home Cnty.*, 53 S.D. 174, 180, 220 N.W. 618, 621 (1928)).

[¶16.] We must decide whether a reassessment plan that creates a temporary lack of uniform taxation among the townships within a county is constitutional. The Supreme Court of Minnesota has considered this question. In *Johnson v. Ramsey County*, the county assessor sought to reassess all property in the county. 187 N.W.2d 675 (Minn. 1971). Because he was unable to complete the reassessment in one year, he began the reassessment in the townships with the greatest disparities. He intended to reassess the balance of the county over a four-year period. The new assessments were placed on the assessment rolls as they were ascertained. The reassessment plan created a temporary lack of uniformity among the county's townships but not within them.

[¶17.] Although counties were not taxing districts under Minnesota law, the *Johnson* court did not find that point dispositive.

From a strictly technical standpoint, if we were to consider [the county] as a single taxing district, there might be some difficulty in justifying disparity, even temporarily, under our constitutional requirement that property of similar nature be taxed equally, but it seems the only practical solution to the problem is to permit the authorities having the duty to reassess the property a reasonable time within which to complete a comprehensive assessment. In the case before us, no one has contended that [the county] is not making a good-faith effort to revaluate the property within the county as soon as possible and to apply a uniform rate in arriving at the adjusted market value, which then becomes the basis for determining the tax to be paid. When this assessment has been completed, a more equitable basis for taxation will exist than ever has before. For the time being, assuming the county proceeds to complete the reassessment within a reasonable time, we feel compelled to hold that since the assessed valuation of [the taxpayer's] property following reassessment is not disproportionate to the assessed valuation of other property within the [township] . . . , the new assessment should be upheld, even though there exists temporarily some disparity between the assessment of [the taxpayer's] property and the assessment of property in other taxing districts within the county. Any other decision would create more disparities than it would eliminate.

*Id.* at 679-80.

[¶18.] Three years later, the Supreme Court of Minnesota considered the constitutionality of a reassessment plan that created a temporary lack of uniform taxation within a municipality. A municipality, unlike a county, is a taxing district under Minnesota law. In *Bethke v. Brown County*, the New Ulm City Council divided the city into various geographical areas which were reassessed one at a time. 223 N.W.2d 757 (Minn. 1974). The new assessments were placed on the assessment rolls as they were ascertained. The reassessment plan created a temporary lack of uniformity within the taxing district. The Court held that the plan to divide the city into geographical segments created an unconstitutional lack

of uniformity within a taxing district. *Id.* at 760. Because *Bethke* involved a municipality, the court distinguished but did not overrule *Johnson*. *Id.*

[¶19.] The present case is analogous to *Johnson*. As in *Johnson*, a more equitable basis for taxation existed when the County completed the reassessment. *See* 187 N.W.2d at 679-80. The County conducted the reassessment to correct grave errors in its assessment rolls and began the reassessment in the townships with the greatest number of errors. *See id.* at 678. Indeed, the reassessments in the four reassessed townships were the full and true value of the agricultural structures. Declaring the County's reassessment plan unconstitutional would not eliminate a lack of uniform taxation but would allow it to persist. *See id.* at 680.

[¶20.] A comprehensive reassessment plan that affords a county a reasonable time within which to complete a reassessment does not violate our Constitution.[4] In this case, the Stehlys have not alleged that the County made anything less than a good-faith effort to complete the reassessment as soon as was practicably possible. *See id.* Although the reassessment plan created a temporary lack of uniform taxation within the County, it also eliminated it. In the meantime, reasonable uniformity within the townships was maintained. *See Bethke*, 223 N.W.2d at 760.

---

4. Several courts have afforded counties "a reasonable time within which to complete a comprehensive reassessment." *Johnson*, 187 N.W.2d at 679 (citing *Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 38 S. Ct. 495, 62 L. Ed. 2d 1154 (1918) (holding that good-faith imposition of temporarily unequal tax burden did not violate the Equal Protection Clause of the United States Constitution)). *See also Hamilton v. Adkins*, 35 So. 2d 183 (Ala. 1948), *cert. denied*, 335 U.S. 861, 69 S. Ct. 133, 93 L. Ed. 407 (1948); *Rogan v. Cnty. Comm'rs of Calvert Cnty.*, 71 A.2d 47 (Md. 1950); *May Dep't Stores Co. v. State Tax Comm'n*, 308 S.W.2d 748 (Mo. 1958); *Skinner*, 345 P.2d 750 (N.M. 1959).

[¶21.]     Affirmed.

[¶22.]     GILBERTSON, Chief Justice, and KONENKAMP, Justice, and MEIERHENRY, Retired Justice, concur.

[¶23.]     ZINTER, Justice, concurs in result.

ZINTER, Justice (concurring in result).

[¶24.]     South Dakota Constitution Article XI, § 2 requires that "[t]axes shall be uniform on all property of the same class[.]"  This "constitutional provision[] relating to equality and uniformity in taxation require[s] equality and uniformity in both rate and valuation or assessment." *W. Two Rivers Ranch v. Pennington Cnty.*, 2002 S.D. 107, ¶ 9, 650 N.W.2d 825, 827.  "[I]ssues over equality and uniformity in taxation must focus on the particular county or taxing district involved." *Id.* ¶ 10.

[¶25.]     I agree that counties are taxing districts for purposes of applying Article XI, § 2.  I also agree that the Minnesota Supreme Court is one authority for determining whether reassessment plans creating a temporary lack of uniform assessments violate state constitutional uniformity clauses.  *See Bethke v. Brown Cnty.,* 301 Minn. 380, 223 N.W.2d 757 (1974); *Johnson v. Ramsey Cnty.*, 290 Minn. 307, 187 N.W.2d 675 (1971).  Unlike the Court, however, I read those cases to say that when the temporary lack of uniform assessments exist within *any taxing*

*district*, which includes a county in South Dakota, temporary non-uniformity is not

permitted.[5]

---

5.    The Court correctly observes that *Johnson* permitted temporary disparity in assessments in a short-term, good-faith reassessment plan of a county. But under Minnesota law, a county was not a taxing district. *Johnson*, 290 Minn. at 313-15, 187 N.W.2d at 678-79. Because a county was not a taxing district, the Minnesota Supreme Court allowed a temporary disparity "between the assessment of [the taxpayer's] property and the assessment of property in *other* taxing districts within the county." *Id.* at 315, 187 N.W.2d at 679-80 (emphasis added). The court noted that it would permit the temporary disparity within the county "*since* the assessed valuation of [the taxpayer's] property following reassessment [was] not disproportionate to the assessed valuation of other property within the [township]," which is a taxing district under Minnesota law. *Id.* (emphasis added). The court further noted, however, that if it were "to consider [the county] as a single taxing district, there might be some difficulty in justifying disparity, even temporarily, under [the] constitutional requirement that property of similar nature be taxed equally." *Id.*

Three years later the court was asked the same question in a case involving a request to extend the *Johnson* ruling to a reassessment plan involving a temporary lack of uniformity within a taxing district. *Bethke*, 301 Minn. at 385, 223 N.W.2d at 760. When faced with this question, as we are today, the Minnesota Supreme Court prohibited even a temporary lack of uniformity that was necessary to reassess all property within the taxing district. The court indicated that it had allowed a temporary non-uniformity in *Johnson* only because counties were not taxing districts. The court stated:

> *In our [Johnson] decision we restated our position that the county did not constitute a taxing district.* We said that the county must be allowed a reasonable time to complete the revaluation of all the properties within its boundaries and that it was not unconstitutional to place upon the tax rolls all the property in an individual taxing district within the county at its reassessed value prior to the completion of the revaluation of the entire county. *The appellants now propose that we extend the theory and logic of the Johnson case to permit a taxing district to place segments and portions of its property upon the tax rolls at reassessed valuations prior to the completion of the revaluation of all the property within the taxing district. We decline to extend the rule adopted in the Johnson case to individual taxing districts.*

(continued . . .)

[¶26.]     Nevertheless, the Minnesota decisions are not the only authority on this question. "The decisions of the various state courts that have had this question before them for determination are not at all uniform[.]" *Skinner v. N.M. State Tax Comm'n,* 66 N.M. 221, 224, 345 P.2d 750, 752 (1959). And in my view, the more persuasive authorities permit good-faith plans of tax equalization, commenced but not completed in a single year within a taxing district, as long as they are reasonable, short-lived, not arbitrary, and do not involve intentional discrimination. *See supra* ¶ 20 (citing authorities). I therefore concur in result.

_____

(. . . continued)

> *Bethke*, 301 Minn. at 384-85, 223 N.W.2d at 760 (emphasis added).

> In light of this language, I respectfully disagree with the majority's conclusion that even though a county is not a taxing district under Minnesota law, "that point [is not] dispositive," and *Johnson* is analogous. *See supra* ¶¶ 17-19. On the contrary, *Bethke* specifically declined to extend the rule of *Johnson* because there was temporary non-uniformity within a taxing district. *See Bethke,* 301 Minn. at 384-85, 223 N.W.2d at 760.