#26196-rev & rem-LSW

**2013 S.D. 33**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JOHN APLAND, ET AL.,                            Plaintiff and Appellee,

v.

BOARD OF EQUALIZATION FOR
BUTTE COUNTY, SOUTH DAKOTA,          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN W. BASTIAN
Judge

\* \* \* \*

KENNETH E. BARKER of
Barker Wilson Law Firm, LLP
Belle Fourche, South Dakota                  Attorneys for plaintiff
                                             and appellee.


ROBERT L. MORRIS of
Day Morris Law Firm, LLP
Belle Fourche, South Dakota                  Attorneys for defendant
                                             and appellant.


\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 8, 2013

OPINION FILED **04/10/13**

#26196

WILBUR, Justice

[¶1.] This is the second property tax appeal to this Court concerning the Butte County Director of Equalization's (Director) methodology for assessing the value of the rangeland property owned by Apland and other appellees (Apland). We must decide whether Director's recalculation on remand conformed to our decision in *Apland I*. The trial court held that Director did not comply with the directives in *Apland I*. We reverse and remand.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.] Apland and Director have been involved in a dispute over the method Director used to calculate the value of Apland's property for tax purposes in 2002 and 2003. In *Apland I*,

> Apland assert[ed] that the methodology used by Director to determine the assessment value of Apland's rangeland violated the Constitutional requirements of equality and uniformity. Specifically, Apland assert[ed] that it was error for Director to use sales of land with "appurtenant water rights" without any adjustment for the market value of those water rights. Apland assert[ed] that this error led to his rangeland, which does not have appurtenant and nontransferable water rights, being assessed at a substantially higher value than other rangeland of similar kind and quality.

*Apland v. Butte Cnty.* (*Apland I*), 2006 S.D. 53, ¶ 17, 716 N.W.2d 787, 792. "Apland's expert, Jerry Kjerstad, stated that 'sales . . . with water rights should not be paired with sales without water rights unless an adjustment for the water rights could be quantified.'" *Id.* ¶ 18 (alteration in original). Thus, the question before this Court in *Apland I* was "whether it was clearly erroneous for Director to use sales of land with access to [the Belle Fourche Irrigation District (BFID)] in his formula when determining that under SDCL 10-6-33.6, the median market value

-1-

per acre in the Southern Neighborhood deviates by more than ten percent from the county median market value per acre, thus allowing Director to establish a separate market value per acre for the land within the Southern Neighborhood." *Id.* (internal footnote omitted).[1]

[¶3.]     This Court held that Director "failed to comply with the Constitutional requirements of equality and uniformity." *Id.* ¶ 20. *See* S.D. Const. art. VIII, § 15; S.D. Const. art. XI, § 2. In order to comply with these Constitutional requirements, we held that, before Director determines the median market value, Director must adjust for sales of land containing appurtenant and nontransferable rights downward to reflect the value of those rights. *Apland I*, 2006 S.D. 53, ¶¶ 19-20, 716 N.W.2d at 793. Accordingly, we remanded this case for proceedings consistent with our opinion with direction to Director to re-determine the property values after giving "appropriate consideration and value to appurtenant and nontransferable water rights, specifically BFID water rights." *Id.* ¶ 26.

---

1.     SDCL 10-6-33.6 provided:

> If the median market value per acre in an identifiable region within a county deviates by more than ten percent from the county median market value per acre, the county director of equalization may establish a separate market value per acre for the land defined by the director of equalization within that identifiable region.

> SDCL 10-6-33.6 allowed Director to form regions or "neighborhoods," as we referred to them in *Apland I*, within a county when assessing tax values if certain conditions were met. Though the Legislature repealed this statute in 2008, it governed the assessment years that are the subject of this appeal. *See* 2008 S.D. Sess. Laws 155, ch. 44, § 23.

[¶4.] On remand, the trial court held a hearing and considered post-trial briefs from the parties. In its first memorandum decision on April 15, 2008, the trial court determined that Director had not complied with the holding of this Court in *Apland I* and required that Director "make adjustments for sales containing appurtenant water rights and adjust those sales prices 'downward[ ]' before calculating the median market values." The trial court determined that an accurate median market value per acre can only be determined after the value of those water rights is established and considered. Further, the trial court held that the methodology utilized by Director to determine the assessment value of Apland's rangeland continued to be in violation of the Constitutional requirements of equality and uniformity. The trial court instructed Director to: (1) determine the value of land with appurtenant and nontransferable water rights either by adopting Apland's paired sales analysis or performing its own analysis; and (2) after determining the value of the land with appurtenant and nontransferable water rights and the median market value per acre, determine whether the recalculation would affect the 10 percent deviation analysis under SDCL 10-6-33.6.

[¶5.] In response to the trial court's first post-remand memorandum decision, Director submitted an affidavit detailing his methodology in reassessing the land. In his affidavit, Director stated:

> 29. That although your Affiant has concluded that there is no value that you can specifically and solely attribute to the value of water rights or access to water for irrigated sales and therefore there is no need to make a "downward adjustment" of the irrigated sales prior to performing the deviation analysis, your Affiant follows the directive of the Supreme Court and Circuit Court and will do the same as [Apland's] expert by

determining value using a small data set which consists only of those sales that are less than 150% of assessed value.

30. That your Affiant undertook a parings analysis for the 2002 and 2003 assessment years using only "good sales"[2] which are non-rejected sales that are not sales over 150% of assessed value.

31. Each non-irrigated sale was paired against each irrigated sale.

32. An adjustment for soil quality is made to account for any productivity difference in each pairing and the resulting dollar difference is assumed to be solely attributable to water rights or access to water.

33. A percentage difference in adjusted sale price per acre is calculated for each pairing.

34. The median of these percentage differences is calculated for all of the pairings involving each non-irrigated sale, and for all of the pairings for all the sales.

35. A negative percentage difference is an indication that irrigation had a negative influence on value. A positive difference is an indication that irrigation influenced the sale price positively.

36. In the 2002 assessment year, there were two non-irrigated sales that were paired against thirty irrigated sales. Both of these sales indicated a positive median difference due to irrigation. One sale indicated a percentage difference of forty-five (45) percent and the other fifty-five (55) percent. Only eight (8) of the sixty (60) individual pairings indicated a negative difference for irrigation.

---

2. A "good" sale is an agricultural sale that is more than 70 acres, a sale for less than 150 percent of the assessed value, and an arms-length transaction. *See* SDCL 10-6-1.4 (defining arms-length transactions); SDCL 10-6-33.20 (repealed 2008) (stating that "[a]ny agricultural land . . . sold in an increment of seventy acres or less[ ] may not be used for the purpose of valuing agricultural land"); SDCL 10-6-74 (stating that "[a]ny real property which sells for more than one hundred fifty percent of its assessed value, may not be used for the purpose of valuing other real property").

37. Thus, if one used only the small data set of "good sales" for the 2002 assessment year, the value of water rights or access to water (irrigation), if one assumed it was solely [due] to water rights or access to water (irrigation), is forty-eight (48) percent of the sale price of each irrigated sale.

38. That for the 2002 assessment year, a downward adjustment of 48% of the sale price of each irrigated sale is then made.

39. That for the 2002 assessment year, after adjusting the sale price of each irrigated sale, the neighborhood analysis is performed and is as follows:
   a. Median Market Value per Acre (Entire County Sales) is $155.00 per acre.
   b. Median Market Value per Acre (Northern Sales) is $104.00 per acre.
   c. Median Market Value per Acre (Southern Sales) is $219.00 per acre.

40. That for the 2002 assessment year, after adjusting the sale price of each irrigated sale, there is a greater than 10% deviation pursuant to SDCL 10-6-33.6.
. . .
44. That for the 2003 assessment year[,] there were no "good sales" of non-irrigated land in which to pair with irrigated land to determine the percentage of sale price attributable to water rights. Nonetheless, forty-eight (48) percent value was assigned as the percentage attributable to each sale and a downward adjustment of 48% of the sale price of each irrigated sale is then made.

45. That for the 2003 assessment year, after adjusting the sale price of each irrigated sale, the neighborhood analysis is performed and is as follows:
   a. Median Market Value per Acre (Entire County Sales) is $133.00 per acre.
   b. Median Market Value per Acre (Northern Sales) is $116.00 per acre.
   c. Median Market Value per Acre (Southern Sales) is $179.00 per acre.

46. That for the 2003 assessment year, after adjusting the sale price of each irrigated sale, there is a greater than 10% deviation pursuant to SDCL 10-6-33.6.
. . .

By stipulation, the parties' briefs and exhibits, including both Director's affidavit and an affidavit and report from Apland's expert, Ronald Ensz,[3] were submitted to the trial court for its consideration.

[¶6.]     In its March 25, 2011 memorandum decision, the trial court concluded that Director failed to value the appurtenant water rights and make a downward adjustment prior to calculating the median market value. The trial court also held that, until an adjustment is made for appurtenant water rights, a median value comparison for the purpose of "neighborhooding" is meaningless. Accordingly, the trial court determined that Director's methodology was incorrect. The trial court entered a judgment in favor of Apland and instructed Director to make the adjustments as determined by Apland's expert for all appeals perfected for the years 2002 to 2009. The Board of Equalization, on behalf of Director, appealed.

## STANDARD OF REVIEW

[¶7.]     "An appeal asserting a violation of a constitutional provision is a question of law reviewed under the de novo standard of review." *Stehly v. Davison Cnty.*, 2011 S.D. 49, ¶ 7, 802 N.W.2d 897, 899. "Statutory construction is also [a question] of law to be reviewed under the de novo standard of review." *Cable v. Union Cnty. Bd. of Cnty. Comm'rs*, 2009 S.D. 59, ¶ 19, 769 N.W.2d 817, 825. "This Court [ ] reviews affidavit evidence de novo." *Id.* "Under the de novo standard of review, we give no deference to the trial court's conclusions of law." *Stehly*, 2011

---

3.     Ensz, who worked with Jerry Kjerstad at Kjerstad Realty Group, became Apland's expert after the death of Kjerstad, Apland's expert in *Apland I.*

S.D. 49, ¶ 7, 802 N.W.2d at 899 (quoting *In re Guardianship of S.M.N., T.D.N., and T.L.N.*, 2010 S.D. 31, ¶ 10, 781 N.W.2d 213, 218).

## ANALYSIS AND DECISION

[¶8.]     Director argues that he correctly performed the methodology as directed by this Court in *Apland I*.  In doing so, he contends that he adjusted sales prices downward to reflect the value of appurtenant water rights.  Further, he asserts that, after that adjustment, there still existed a more than 10 percent deviation in the median market value per acre in an identifiable region as compared to the county median market value.  Thus, Director argues that he was justified in applying SDCL 10-6-33.6 and establishing a separate market value per acre within each identifiable region.

[¶9.]     "All real property in South Dakota is to be assessed for tax purposes at its true and full value."  *Apland I*, 2006 S.D. 53, ¶ 16, 716 N.W.2d at 792.

> The following "underlying constitutional provisions must . . . be complied with:
> (1) the burden of taxation of all property is to be equitable, S.D. Const. art. XI, § 2,
> (2) agricultural and nonagricultural property may be separated into distinct classes for tax purposes, S.D. Const. art. VIII, § 15,
> (3) valuation of property is not to exceed its actual value, S.D. Const. art. XI, § 2, and
> (4) taxation is to be uniform on all property in the same class. S.D. Const. art. VIII, § 15; S.D. Const. art. XI, § 2."

*Id.* (quoting *Butte Cnty. v.Vallery,* 1999 S.D. 142, ¶ 12, 602 N.W.2d 284, 287).

"There is a presumption that tax officials act in accordance with the law and not arbitrarily or unfairly when assessing property, and the taxpayer bears the burden to overcome this presumption."  *Id.* (quoting *Burke v. Butte Cnty.*, 2002 S.D. 17, ¶ 18, 640 N.W.2d 473, 479).  "To overcome this presumption, 'the taxpayer must

produce sufficient evidence to show the assessed valuation was in excess of true and full value, lacked uniformity in the same class, or was discriminatory.'" *Id.* (quoting *Vallery*, 1999 S.D. 142, ¶ 11, 602 N.W.2d at 287).

[¶10.]     In *Apland I*, we stated that "the methodology undertaken by Director was correct but for his failure to give appropriate consideration and value to appurtenant and nontransferable water rights, specifically BFID water rights." *Id.* ¶ 26. Pursuant to our directives in *Apland I*, Director was instructed to: (1) make adjustments downward for sales containing appurtenant water rights; and (2) only after making those adjustments, determine whether the median market value per acre in an identifiable region deviates by more than 10 percent from the county median market value per acre under SDCL 10-6-33.6. Thus, at its core, this appeal centers on whether Director properly executed the directives of *Apland I*. The trial court held that Director had not.

[¶11.]     On remand, Director submitted an affidavit in which he performed the methodology required in *Apland I* to satisfy the requirements of SDCL 10-6-33.6. In the 2002 assessment year, Director, using only "good sales," paired non-irrigated sales against irrigated sales. He made an adjustment for soil quality to account for any productivity difference in each pairing and expressed that difference as a percentage. Director determined that sales without water rights sold for 48 percent less than sales with water rights and made a downward adjustment to irrigated sales using that percentage.

[¶12.]     Director also followed our directives from *Apland I* in assessment year 2003. Because there were no "good sales" of non-irrigated land in which to pair

with irrigated land in 2003, Director again used 48 percent as the percentage attributable to water rights and made a downward adjustment of 48 percent to each irrigated sale.

[¶13.] After making adjustments for irrigated sales in 2002 and 2003, Director calculated the median market value per acre in each identifiable region. Notably, both Ensz and Director had nearly identical calculations for the "adjusted" median sales prices for the same years – 2002 and 2003. For example, in assessment year 2002, Ensz concluded that the adjusted median sales prices were: $156 per acre for all sales within the county; $221 per acre for southern sales; and $104 per acre for northern sales. As noted above, Director concluded that the adjusted median sales prices for assessment year 2002 were: $155 per acre for all sales within the county; $219 per acre for southern sales; and $104 per acre for northern sales. Additionally, in assessment year 2003, Director and Ensz reached *identical* conclusions for the median sales prices for the entire county ($133 per acre), southern sales ($179 per acre), and northern sales ($116 per acre).

[¶14.] It was only after these adjustments and determinations that Director determined the median market value per acre in the identifiable region deviated by more than 10 percent from the county median market value per acre for assessment years 2002 and 2003. Thus, under SDCL 10-6-33.6, Director was permitted to establish a separate market value per acre for the land defined by Director within the identifiable region.

[¶15.] After Director completed the procedure for "neighborhooding," he concluded that the assessed valuations for Apland's property were valid and not in

excess of full and true value.[4]  However, Apland's argument is that, even after Director created neighborhoods properly incorporating the value of BFID water rights, Director's valuations were not equal and uniform within the respective neighborhoods as required by our Constitution.  From this record, we are not able to determine if Director's method of valuation of Apland's property resulted in an equal and uniform assessment within each of the newly created neighborhoods.  Although Ensz submitted evidence suggesting his view of that question, the trial court did not consider this last remaining specific question.  As a result of including the impact of appurtenant and nontransferable water rights, this determination may require a recalculation of the assessed values of parcels within each neighborhood.

## CONCLUSION

[¶16.]      The trial court concluded that Director's methodology on remand was incorrect.  We disagree, in part, because Director did the correct analysis to ascertain whether neighborhoods were justified.  We remand for a determination of whether Director's assessments complied with the Constitutional requirements of equality and uniformity within the neighborhoods.

[¶17.]      Reverse and remand.

[¶18.]      GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.

---

4.      In his affidavit, Director concluded that "it is your Affiant's opinion that the assessed values for . . . [Apland] for the 2002 and 2003 assessment years are valid assessments under the applicable law and are not in excess of full and true value.