#30217-a-SPM
**2024 S.D. 1**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MCLANE WESTERN INC.,
MCLANE MINNESOTA, INC.,                      Appellants,

     v.

SOUTH DAKOTA DEPARTMENT
OF REVENUE,                             Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHRISTINA L. KLINGER
Judge

* * * *

AARON T. GALLOWAY of
Lynn Jackson Shultz & Lebrun, P.C.
Rapid City, South Dakota

JOSEY M. BLARE of
Lynn Jackson Shultz & Lebrun, P.C.
Sioux Falls, South Dakota               Attorneys for appellants.


KIRSTEN E. JASPER
Special Assistant Attorney General
Pierre, South Dakota                  Attorneys for appellee.

* * * *

CONSIDERED ON BRIEFS
OCTOBER 3, 2023
OPINION FILED **01/10/24**

MYREN, Justice

[¶1.]    McLane Western, Inc. and McLane Minnesota, Inc. (collectively McLane) made numerous refund requests totaling $537,522.07 to the South Dakota Department of Revenue.  The Department denied McLane's refund requests, and McLane subsequently requested a contested case hearing before the South Dakota Office of Hearing Examiners (OHE).  OHE granted the Department's motion for summary judgment in its proposed decision.  The Department adopted the proposed decision and denied McLane's refund requests.  McLane appealed to the circuit court, which issued a memorandum decision and order affirming the Department's denial of McLane's refund requests.  McLane appeals.

## Factual and Procedural Background

[¶2.]    McLane is a South Dakota-licensed wholesaler of tobacco products. McLane purchased tobacco products, known as Other Tobacco Products (OTP)[1], from U.S. Smokeless Tobacco Brands, Inc. (UST Sales), also a South Dakota-licensed wholesaler of tobacco products.  UST Sales did not manufacture the products it sold to McLane.  It purchased the OTP from its affiliate, U.S. Smokeless Tobacco Manufacturing Company, LLC (UST Manufacturing), a federally licensed tobacco manufacturer.[2]

---

1.    OTP includes "cigars, snuff, chewing tobacco, and any other products made up or composed of tobacco in whole or in part, except cigarettes."  SDCL 10-50-1(8).

2.    Prior to 1990, McLane purchased the OTP from a federally licensed manufacturer known as UST Co.  In 1990, UST Co. formed two subsidiaries (UST Sales and UST Manufacturing).  The company's reorganization caused McLane to purchase the OTP from a licensed wholesaler.  In May 2014, UST

<span style="float:right">(continued . . .)</span>

[¶3.]     After purchasing the OTP from UST Sales, McLane brought the tobacco product into South Dakota.[3]  Accordingly, McLane paid South Dakota's 35% tobacco tax imposed in SDCL 10-50-61 which provides:

> [T]here is imposed, whether or not a sale occurs, a tax upon all tobacco products in this state and upon any person engaged in business as a *licensed distributor or licensed wholesaler* thereof, at the rate of thirty-five percent of the *wholesale purchase price* of such tobacco products.  Such tax shall be imposed *at the time the distributor or wholesaler brings or causes to be brought into this state tobacco products for sale*; makes, manufactures, or fabricates tobacco products in this state for sale in this state; or ships or transports tobacco products to dealers in this state to be sold by those dealers.  For the purposes of this chapter, *wholesale purchase price is the price for which a manufacturer sells tobacco products to a licensed distributor or licensed wholesaler* exclusive of any discount or other reduction.  Any licensed distributor or licensed wholesaler who has paid tax pursuant to this section and subsequently sells the tobacco products to another licensed distributor or licensed wholesaler for resale, or sells the tobacco products outside of this state, shall receive a credit for the tax paid pursuant to this section on such tobacco products.

(Emphases added.)

[¶4.]     From July 2011 until May 2014, McLane calculated the tobacco tax it owed by using the amount it paid to UST Sales for the OTP as the tax base.  The amount McLane paid UST Sales for the OTP was more than what UST Sales paid UST Manufacturing for the same OTP.  The price paid by

---

(. . . continued)
     Sales merged with UST Manufacturing and McLane resumed purchasing OTP directly from a federally licensed manufacturer.

3.     The parties stipulated that McLane brought the OTP into South Dakota. This is consequential because the tobacco tax is imposed at the time the tobacco is brought into South Dakota.

McLane presumably included the operating costs of UST Sales and any profit margin.

[¶5.]    From August 13, 2014, until February 10, 2016, McLane submitted numerous refund requests to the Department regarding the tax payments it made throughout a 35-month reporting period.[4]  McLane opined that it had overpaid its tax obligation by $537,522.07.  McLane reported that it had paid a 35% tax to South Dakota based on the price it paid to UST Sales for the OTP.  McLane argued that its tax obligation should have been based on the price UST Sales (a "licensed wholesaler" under the statute) paid to UST Manufacturing (a "manufacturer" under the statute).  The Department initially granted McLane's refund request for the July 2011 reporting period and issued a $20,822.67 credit.  The Department subsequently placed the refund credit "on hold" to further research the issue.  The parties continued to exchange correspondence from September 19, 2014, until April 3, 2019, when the Department issued its final letter denying McLane's refund requests.

[¶6.]    McLane requested a contested case hearing before OHE.  OHE proposed a decision granting the Department's motion for summary judgment and denying McLane's refund requests.  The Department adopted the proposed decision in its final decision and order.  McLane appealed the Department's final decision and order to the circuit court.

---

4.    The parties have stipulated that the reporting period at issue is recognized as being from July 2011 until May 2014.

[¶7.]     The circuit court issued a memorandum opinion affirming the Department's final decision and order. It held that the advance tax obligation imposed by SDCL 10-50-61 was triggered when McLane caused the OTP to be brought into South Dakota after purchasing the tobacco product from UST Sales. It reasoned that under the circumstances, a strict reading of SDCL 10-50-61 would cause an absurd result because it would permit McLane to bring the OTP into South Dakota without being subjected to the state's tobacco tax because McLane did not purchase the OTP directly from a tobacco manufacturer. Based on this premise, the circuit court concluded that it must look beyond the statute's language to avoid that absurd result. Ultimately, the circuit court concluded that the tax was properly calculated based on the OTP purchase price McLane paid to UST Sales.

## Standard of Review

[¶8.]     This case involves the review of an interpretation of a statute as applied to stipulated facts. Thus, "the application of a legal standard to those [undisputed] facts is a question of law reviewed de novo." *State v. Doap Deng Chuol*, 2014 S.D. 33, ¶ 19, 849 N.W.2d 255, 261 (alteration in original) (quoting *State v. Lamont*, 2001 S.D. 92, ¶ 12, 631 N.W.2d 603, 607). Under this standard, "no deference is given to the circuit court's conclusions of law." *Good Lance v. Black Hills Dialysis, LLC*, 2015 S.D. 83, ¶ 9, 871 N.W.2d 639, 643 (citing *Stehly v. Davison Cnty.*, 2011 S.D. 49, ¶ 7, 802 N.W.2d 897, 899).

## Decision

[¶9.]     In 1995, the South Dakota Legislature imposed a 10% tax on all tobacco products brought into the state. SDCL 10-50-61. The tax is calculated

based on the "<u>wholesale purchase price</u>," which is "the price for which a manufacturer sells tobacco products to a licensed distributor or licensed wholesaler exclusive of any discount or other reduction." *Id.* Furthermore, the tax is imposed "at the time the distributor or wholesaler brings or causes to be brought into this state tobacco products for sale; makes, manufactures, or fabricates tobacco products in this state for sale in this state; or ships or transports tobacco products to dealers in this state to be sold by those dealers." *Id.* In 2006, the voters of South Dakota approved Initiative 2, which increased the taxation rate in SDCL 10-50-61 to 35% beginning January 1, 2007.

[¶10.]    The parties stipulated that UST Manufacturing is a federally licensed tobacco manufacturer and that UST Sales and McLane are both South Dakota-licensed wholesalers of OTP. As South Dakota-licensed wholesalers, UST Sales and McLane are each subject to the South Dakota tobacco tax for any OTP they bring into South Dakota or cause to be brought into South Dakota. The parties stipulated that McLane caused the OTP in question to be brought into South Dakota. Thus, McLane was responsible for paying the tobacco tax when it brought the OTP into South Dakota. The issue presented by these unique facts is what constitutes the "wholesale purchase price" under SDCL 10-50-61 when the licensed wholesaler responsible for submitting the advance tobacco tax did not purchase the OTP directly from a tobacco manufacturer.

[¶11.]    "[S]tatutory interpretation is a question of law, reviewed de novo." *Fluth v. Schoenfelder Constr., Inc.*, 2018 S.D. 65, ¶ 12, 917 N.W.2d 524, 528 (alteration in original) (quoting *Upell v. Dewey Cnty. Comm'n*, 2016 S.D. 42, ¶ 6, 880

N.W.2d 69, 71). "In discerning the intent of the Legislature, we examine statutory language by 'attempt[ing] to give words their plain meaning and effect. . . .'" *Id.* (alteration and omission in original) (quoting *Gloe v. Union Ins. Co.*, 2005 S.D. 30, ¶ 8, 694 N.W.2d 252, 256). "When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court[']s only function is to declare the meaning of the statute as clearly expressed." *Fair v. Nash Finch Co.*, 2007 S.D. 16, ¶ 7, 728 N.W.2d 623, 628 (quoting *In re Yanni,* 2005 S.D. 59, ¶ 8, 697 N.W.2d 394, 397).

[¶12.]		McLane acknowledges that it owed an advance tobacco tax obligation based on the "wholesale purchase price" of the OTP it purchased from UST Sales. However, it argues that the statutory definition of "wholesale purchase price" requires that its tax obligation should have been calculated based on the price UST Sales paid the tobacco manufacturer, UST Manufacturing. McLane notes that UST Sales resold the OTP it purchased from UST Manufacturing at a higher value than the price it paid. Subsequently, McLane reported its tobacco tax obligations based on the higher price charged by UST Sales. As a result, McLane paid the tobacco taxes it owed to South Dakota based on the price of the tobacco it purchased plus the amounts UST Sales added to cover its cost of operations and profit. McLane contends that its inflated tax obligation report resulted in an overpayment of the taxes intended by the statute. Thus, McLane argues that a tax refund is justified under the statute based on the difference. McLane contends a plain reading of the statute indicates that the South Dakota Legislature intended the tobacco tax to be

solely based on the price the tobacco manufacturer charged when it sold the tobacco product to a licensed wholesaler.

[¶13.]     A plain reading of SDCL 10-50-61 indicates that the South Dakota Legislature intended to impose a uniform tax by establishing a consistent time of taxation (when the tobacco product is brought into the state) and a consistent time and method for the determination of the taxable value (at the time a manufacturer sells the tobacco products to a "licensed distributor or licensed wholesaler exclusive of any discount or other reduction"). In other words, the South Dakota Legislature intended the advance tobacco tax to be paid by the South Dakota-licensed distributor or wholesaler that brought the tobacco product into South Dakota at the time the tobacco product entered the state. It is equally clear that the South Dakota Legislature intended the tax to be imposed on the price the tobacco manufacturer charged for the OTP when it was sold to a licensed wholesaler. UST Sales was a South Dakota-licensed wholesaler when it purchased the OTP from UST Manufacturing.[5]

---

5.     The Department asserts various alleged logistical problems with its ability to audit the price charged by tobacco manufacturers for OTP. These arguments are unconvincing for two reasons. First, both UST Sales and McLane are South Dakota-licensed wholesalers and subject to all the Department's reporting and auditing requirements. The existing regulations impose detailed and stringent reporting requirements. *See, e.g.*, ARSD 64:44:03:01 (which requires licensed distributors and wholesalers to "distinguish each cigarette and tobacco shipment by manufacturer and individual brand and must identify the source of all cigarettes received or shipped into South Dakota" and to provide "invoices establishing the amount of cigarettes sold from such manufacturer"). If the current regulations do not provide sufficient means to obtain the information necessary to audit the manufacturer's price for OTP, those regulations can be amended by the Department through promulgation of new rules. *See* SDCL 10-50-60. Second, even if such

(continued . . .)

#30217

[¶14.] Under the statutory scheme created by the South Dakota Legislature, the tobacco tax imposed is determined by multiplying the tax rate (35%) by the wholesale purchase price. The price of tobacco products increases as the products progress through the distribution chain because each participant (distributor, wholesaler, dealer) adds something to the price to compensate for its efforts. SDCL 10-50-61 authorizes a tax on tobacco products. It does not empower the Department to impose or collect any tax beyond the price of the tobacco products when the manufacturer sold the OTP to a South Dakota-licensed wholesaler or distributor.

[¶15.] When enacting these taxation statutes, it is probable that the South Dakota Legislature envisioned the traditional distribution chain in which a tobacco manufacturer sells the OTP directly to a South Dakota-licensed wholesaler, which then sells the product directly to dealers. This case involves a licensed wholesaler selling to another licensed wholesaler where the second wholesaler causes the OTP to be brought into South Dakota. The unique scenario in this case was perhaps not specifically contemplated by the South Dakota Legislature. However, the South Dakota Legislature's intent is nonetheless clear from the plain language of SDCL 10-50-61—"wholesale purchase price is the price for which a manufacturer sells tobacco products to a licensed distributor or licensed wholesaler exclusive of any

_____

(. . . continued)
logistical problems were to exist, they would not alter the plain language of the statute. If the language of the statute presents logistical problems the Department cannot address through its existing regulatory authority, its remedy lies with the South Dakota Legislature.

discount or other reduction."[6]  In this scenario, the wholesale purchase price was the price at which UST Manufacturing (a tobacco manufacturer) sold tobacco products to UST Sales (a South Dakota-licensed distributor and wholesaler).  The tax was due when McLane brought the tobacco product into South Dakota.  The parties stipulated that McLane was the South Dakota-licensed wholesaler that brought the tobacco product into South Dakota, and, consequently, McLane was responsible for reporting that event and paying the advance tobacco tax.  Because McLane calculated the tax it owed based on the higher price it paid to UST Sales, it overpaid the tobacco taxes due under SDCL 10-50-61.  The Department erred in concluding otherwise.

[¶16.]     However, this does not mean that McLane was entitled to a refund for these overpaid amounts.  The South Dakota Legislature specified that the advance tax obligation must be passed along the distribution chain and is paid by the

---

6.    South Dakota is not the first jurisdiction to address this issue.  *See U.S. Tobacco Sales & Mktg. Co. v. State, Dep't of Revenue*, 982 P.2d 652 (Wash. Ct. App. 1999).  In *U.S. Tobacco Sales & Marketing Co. v. State, Department of Revenue*, the Washington Court of Appeals noted that the Washington Legislature defined a distributor to be any person engaged in the business of bringing tobacco products into the state.  982 P.2d at 655–56.  In its decision, the court found UST Manufacturing to have met the statutory definition of a manufacturer and UST Sales to have met the statutory definition of a distributor.  *Id.* at 656.  The Washington Court of Appeals further determined that Washington's OTP tax was to be calculated based on the value of the OTP at the time the product was sold by the manufacturer.  *Id.* at 658.

ultimate consumer. SDCL 10-50-8.[7] Although McLane overpaid its advance tax obligation, it fully recovered the advance tax it paid from the dealers to whom it subsequently sold the OTP. The dealers then recovered that tax from the consumers who purchased the OTP. McLane was made whole by its resale of the OTP and is not entitled to any refund. On this basis, we affirm the Department's denial of McLane's request for a refund.

[¶17.] JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.

---

7. SDCL 10-50-8 provides:

> The impact of the tax levied by this chapter is hereby declared to be on the vendee, user, consumer, or possessor of cigarettes or tobacco products in this state and when said tax is paid by any other person such payment shall be considered as an advance payment and shall thereafter be added to the price of the cigarettes or tobacco products and recovered from the ultimate consumer or user. In making a sale of cigarettes or tobacco products in this state a distributor may separately state and show upon the invoice covering such sale the amount of tax on the cigarettes or tobacco products sold. The provisions of this section shall in no way affect the method of collection of such tax on cigarettes as now provided by existing law.